# Exhibit A -
# Los Angeles County Superior Court Case No. LA088106 Minutes

LAV            TCIS - CASE SUMMARY     JUD DIST LAV
CASE# LA088106  DEF# 01  VIOL DT 011618   FILE DT 032818  TOTAL DEFTS 01
 FIRST TRENT     MID MICHAEL     LAST TOMASOVICH     SUFX
 ADDR  5112 SEPULVEDA BLVD    CITY SHERMAN OAKS    ZIP 91403    ST CA
 DOB  04291991  SEX M  HAIR BLN  EYES BLU  HGT 509  WGT 140  RACE W
ID#S: OLN        ST   LPD 180000809 SSN        BKG  005205839
 VLN        ST   FBI 523053ND7  MAIN 33417164 CII  A33351014
AKA FIRST        MID      LAST      SUFX
PROS ATTY EDWARD J. NISON      DA    DEF ATTY JONATHAN J. KISSEL    PR
                PROBATION TERMINATED
BAIL-WRT INFO  UK  $           WARRANT ORDERED     (020119)
                WARRANT RECALLED    (111320)
PREV EVENT PROBATION VIOLATION HEARING   ON 121621 IN VAN NUYS DPT 100
NEXT EVENT PROCEEDINGS TERMINATED     ON    IN     DPT
 TOTAL DUE TO COURT $   120.00     BALANCE DUE $    120.00
         --- CASE DISPOSITION ---
CT VIOL        TYPE DG PLEA  DATE  CODE  PROB JAIL  A/O   FINE  SCH LC
01 11352(A) H&S     FF   NC  051518  CON F003Y 180D
02 11351 H&S       FF   NC  051518  CON F003Y 180D


 FOR DETAIL DOCKET PRESS ENTER      ADDTL CHARGES PRESS PA1
 PRINT DOCKET _    NXT CASE# _____   DEF# 01      * MCA1 *
                DFS223 10:02:43 PAGE REQUESTED NOT CONTAINED IN
CURRENT MESSAGE
         SUPERIOR COURT OF CALIFORNIA
         COUNTY OF LOS ANGELES
NO. LA088106              PAGE NO.  1
THE PEOPLE OF THE STATE OF CALIFORNIA   VS.      CURRENT DATE 12/20/21
DEFENDANT 01: TRENT MICHAEL TOMASOVICH
LAW ENFORCEMENT AGENCY EFFECTING ARREST: GLENDALE POLICE DEPARTMENT

BAIL: APPEARANCE  AMOUNT   DATE   RECEIPT OR  SURETY COMPANY  REGISTER
 DATE    OF BAIL  POSTED   BOND NO.        NUMBER
 04/13/18   $30,000.00 01/22/18 SV504880923  SEAVIEW INS COMPANY

CASE FILED ON 03/28/18.
 COMPLAINT FILED, DECLARED OR SWORN TO CHARGING DEFENDANT WITH HAVING
COMMITTED, ON OR ABOUT 01/16/18 IN THE COUNTY OF LOS ANGELES, THE FOLLOWING
OFFENSE(S) OF:
 COUNT 01: 11352(A) H&S FEL
 COUNT 02: 11351 H&S FEL
NEXT SCHEDULED EVENT:
 04/13/18  830 AM  ARRAIGNMENT  DIST VAN NUYS COURTHOUSE DEPT 100


     FOR ADDITIONAL INFORMATION PRESS PA1 KEY      * MCAS * DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106            PAGE NO.  2
 DEF NO.  01            DATE PRINTED 12/20/21

ON 04/13/18 AT  830 AM  IN VAN NUYS COURTHOUSE DEPT 100

CASE CALLED FOR ARRAIGNMENT
PARTIES: BERNARD J. KAMINS (JUDGE)  TATEVIK MKITARYAN  (CLERK)
         ENEDINA GONZALES  (REP)    ANN KORBAN  (DA)
DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY JONATHAN J. KISSEL PRIVATE
  COUNSEL
DEFENDANT STATES HIS/HER TRUE NAME AS CHARGED.
A COPY OF THE COMPLAINT AND THE ARREST REPORT GIVEN TO DEFENDANTS COUNSEL.
THE COURT ORDERS A PRE-PLEA REPORT PURSUANT TO PENAL CODE SECTION 1203.7.
THE DEFENDANT'S COUNSEL DOES NOT CONSENT TO A PRE-PLEA INTERVIEW.
 COURT ORDERS AND FINDINGS:
 -THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.
 .
 ARRAIGNMENT CONTINUED TO 05-15-18 FOR POSSIBLE EARLY


        FOR ADDITIONAL INFORMATION PRESS PA1 KEY      * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106              PAGE NO.  3
 DEF NO.  01               DATE PRINTED 12/20/21


 DISPOSITION.
 .
 REQUEST FOR PRE-PLEA REPORT IS FORWARDED TO PROBATION
 DEPARTMENT FORTHWITH.
 .
 BENCH WARRANT RECALLED AND QUASHED.
 .
 MINUTES BY MSOTELO
 WAIVES STATUTORY TIME.
 NEXT SCHEDULED EVENT:
 05/15/18   830 AM  DISPOSITION   DIST VAN NUYS COURTHOUSE DEPT 100
 04/13/18 BAIL TO STAND, # SV504880923

 CUSTODY STATUS: BAIL TO STAND


ON 05/15/18 AT  830 AM  IN VAN NUYS COURTHOUSE DEPT 100


        FOR ADDITIONAL INFORMATION PRESS PA1 KEY      * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106              PAGE NO.  4
 DEF NO.  01               DATE PRINTED 12/20/21


 CASE CALLED FOR DISPOSITION
 PARTIES: NEETU S. BADHAN-SMITH (JUDGE)  TATEVIK MKITARYAN (CLERK)
         ENEDINA GONZALES  (REP)    RONDA BRODY  (DA)
DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY JONATHAN J. KISSEL PRIVATE
  COUNSEL
DEFENDANT ADVISED OF AND PERSONALLY AND EXPLICITLY WAIVES THE FOLLOWING RIGHTS:

25

WRITTEN ADVISEMENT OF RIGHTS AND WAIVERS FILED, INCORPORATED BY REFERENCE
HEREIN
JURY TRIAL OR COURT TRIAL AND PRELIMINARY HEARING
  CONFRONTATION AND CROSS-EXAMINATION OF WITNESSES;
  SUBPOENA OF WITNESSES INTO COURT TO TESTIFY IN YOUR DEFENSE;
  AGAINST SELF-INCRIMINATION;
DEFENDANT ADVISED OF THE FOLLOWING:
 THE NATURE OF THE CHARGES AGAINST HIM, THE ELEMENTS OF THE OFFENSE IN THE
  COMPLAINT, AND POSSIBLE DEFENSES TO SUCH CHARGES;
 THE POSSIBLE CONSEQUENCES OF A PLEA OF GUILTY OR NOLO CONTENDERE, INCLUDING


          FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS * DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                     PAGE NO.  5
 DEF NO.  01                           DATE PRINTED 12/20/21


 THE MAXIMUM PENALTY AND ADMINISTRATIVE SANCTIONS AND THE POSSIBLE LEGAL
  EFFECTS AND MAXIMUM PENALTIES INCIDENT TO SUBSEQUENT CONVICTIONS FOR THE
  SAME OR SIMILAR OFFENSES;
 THE EFFECTS OF PROBATION;
 IF YOU ARE NOT A CITIZEN, YOU ARE HEREBY ADVISED THAT A CONVICTION OF THE
  OFFENSE FOR WHICH YOU HAVE BEEN CHARGED WILL HAVE THE CONSEQUENCES OF
  DEPORTATION, EXCLUSION FROM ADMISSION TO THE UNITED STATES, OR DENIAL OF
  NATURALIZATION PURSUANT TO THE LAWS OF THE UNITED STATES.
 THE COURT FINDS THAT EACH SUCH WAIVER IS KNOWINGLY, UNDERSTANDINGLY, AND
  EXPLICITLY MADE; COUNSEL JOINS IN THE WAIVERS
 THE DEFENDANT WITH THE COURTS APPROVAL, PLEADS NOLO CONTENDERE TO COUNT 01 A
  VIOLATION OF SECTION 11352(A) H&S.  THE COURT FINDS THE DEFENDANT GUILTY.
 COUNT (01) : DISPOSITION: CONVICTED
 THE DEFENDANT WITH THE COURTS APPROVAL, PLEADS NOLO CONTENDERE TO COUNT 02 A
  VIOLATION OF SECTION 11351 H&S.  THE COURT FINDS THE DEFENDANT GUILTY.
 COUNT (02) : DISPOSITION: CONVICTED
  COURT ORDERS AND FINDINGS:


          FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS * DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                     PAGE NO.  6
 DEF NO.  01                           DATE PRINTED 12/20/21


  -TAHL WAIVER IS ORDERED FILED.
 COURT FINDS THAT THERE IS A FACTUAL BASIS FOR DEFENDANT'S PLEA, AND COURT
  ACCEPTS PLEA.
 DEFENDANT'S PLEA ENTERED PURSUANT TO PEOPLE VERSUS WEST.
 DEFENDANT PLEADS OPEN TO THIS COURT.
 NEXT SCHEDULED EVENT:
  SENTENCING
  DEFENDANT WAIVES ARRAIGNMENT FOR JUDGMENT AND STATES THERE IS NO LEGAL CAUSE
  WHY SENTENCE SHOULD NOT BE PRONOUNCED. THE COURT ORDERED THE FOLLOWING
  JUDGMENT:
 AS TO COUNT  (01):
 IMPOSITION OF SENTENCE SUSPENDED
 DEFENDANT PLACED ON FORMAL PROBATION

3

FOR A PERIOD OF 003 YEARS UNDER THE FOLLOWING TERMS AND CONDITIONS:
SERVE 180 DAYS IN LOS ANGELES COUNTY JAIL
PLUS $40.00 COURT OPERATIONS ASSESSMENT (PURSUANT TO 1465.8(A)(1) P.C.)
 $30.00 CRIMINAL CONVICTION ASSESSMENT (PURSUANT TO 70373 G.C.)


          FOR ADDITIONAL INFORMATION PRESS PA1 KEY       * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                    PAGE NO.  7
 DEF NO.  01                DATE PRINTED 12/20/21


   $50.00 CRIME LABORATORY ANALYSIS FEE (PURSUANT TO 11372.5 H&S)
 PERFORM 45 DAYS OF COMMUNITY LABOR
   TOTAL DUE: $120.00
COUNT (01): DISPOSITION: CONVICTED
ABSTRACT ISSUED ON 05/15/18 FOR COUNT 01
DMV JUDGMENT CODE  JG
NEXT SCHEDULED EVENT:
 SENTENCING
 DEFENDANT WAIVES ARRAIGNMENT FOR JUDGMENT AND STATES THERE IS NO LEGAL CAUSE
 WHY SENTENCE SHOULD NOT BE PRONOUNCED. THE COURT ORDERED THE FOLLOWING
 JUDGMENT:
AS TO COUNT  (02):
IMPOSITION OF SENTENCE SUSPENDED
DEFENDANT PLACED ON FORMAL PROBATION
 FOR A PERIOD OF 003 YEARS UNDER THE FOLLOWING TERMS AND CONDITIONS:
 SERVE 180 DAYS IN LOS ANGELES COUNTY JAIL
 PLUS $40.00 COURT OPERATIONS ASSESSMENT (PURSUANT TO 1465.8(A)(1) P.C.)


          FOR ADDITIONAL INFORMATION PRESS PA1 KEY       * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                    PAGE NO.  8
 DEF NO.  01                DATE PRINTED 12/20/21


   $30.00 CRIMINAL CONVICTION ASSESSMENT (PURSUANT TO 70373 G.C.)
   $50.00 CRIME LABORATORY ANALYSIS FEE (PURSUANT TO 11372.5 H&S)
 PERFORM 45 DAYS OF COMMUNITY LABOR
   TOTAL DUE: $120.00
THE COURT ORDERS PROBATION TO PREPARE A FIREARMS PROHIBITION AND RELINQUISHMENT
  REPORT PURSUANT TO PENAL CODE SECTION 29810.
 IN ADDITION:
 -THE DEFENDANT IS TO PAY A RESTITUTION FINE PURSUANT TO SECTION
  1202.4(B) PENAL CODE IN THE AMOUNT OF $300.00
 -DEFENDANT IS ORDERED TO PAY A PROBATION REVOCATION RESTITUTION
  FINE PURSUANT TO PENAL CODE SECTION 1202.44, IN THE AMOUNT OF
  $ 300.00
 -OBEY ALL LAWS AND ORDERS OF THE COURT.
 -OBEY ALL RULES AND REGULATIONS OF THE PROBATION DEPARTMENT.
 -DEFENDANT TO REPORT TO THE PROBATION OFFICER WITHIN
  48 HOURS.
 -COOPERATE WITH THE PROBATION OFFICER IN A PLAN FOR

FOR ADDITIONAL INFORMATION PRESS PA1 KEY          * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                          PAGE NO.   9
 DEF NO.  01                          DATE PRINTED 12/20/21


    DRUG TREATMENT PROGRAM.
   -SEEK AND MAINTAIN TRAINING, SCHOOLING OR EMPLOYMENT AS APPROVED
    BY THE PROBATION OFFICER.
   -MAINTAIN RESIDENCE AS APPROVED BY THE PROBATION OFFICER.
   -KEEP PROBATION OFFICER ADVISED OF YOUR RESIDENCE AND WORK AND
    HOME TELEPHONE NUMBERS AT ALL TIMES.
   -SUPPORT DEPENDENTS AS DIRECTED BY THE PROBATION OFFICER.
   -SUBMIT YOUR PERSON AND PROPERTY TO SEARCH AND SEIZURE AT ANY
    TIME OF THE DAY OR NIGHT, BY ANY PROBATION OFFICER OR OTHER
    PEACE OFFICER, WITH OR WITHOUT A WARRANT, PROBABLE CAUSE OR
    REASONABLE SUSPICION.
   -DO NOT USE OR THREATEN TO USE FORCE OR VIOLENCE ON ANY PERSON.
    DO NOT ANNOY, HARASS OR MOLEST ANY PERSON OR WITNESS INVOLVED IN
    THIS CASE.
   -DO NOT USE OR POSSESS ANY NARCOTICS, DANGEROUS OR RESTRICTED
    DRUGS OR ASSOCIATED PARAPHERNALIA, EXCEPT WITH A VALID
    PRESCRIPTION AND STAY AWAY FROM PLACES WHERE USERS OR SELLERS


       FOR ADDITIONAL INFORMATION PRESS PA1 KEY          * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                          PAGE NO.   10
 DEF NO.  01                          DATE PRINTED 12/20/21


    CONGREGATE.  DO NOT ASSOCIATE WITH DRUG USERS OR SELLERS
    UNLESS ATTENDING A DRUG TREATMENT PROGRAM.
   -REGISTER AS A CONVICTED NARCOTICS OFFENDER, CARRY PROOF OF
    REGISTRATION AT ALL TIMES, DISPLAY REGISTRATION TO ANY LAW
    ENFORCEMENT OFFICER UPON REQUEST.
   -SUBMIT TO PERIODIC CONTROLLED SUBSTANCE TESTING WHEN REQUESTED
    BY THE PROBATION OFFICER OR ANY OTHER PEACE OFFICER.
   COURT ORDERS AND FINDINGS:
   -USE ONLY YOUR TRUE NAME, STATED TO BE TRENT MICHAEL TOMASOVICH
   -IF YOU LEAVE THE COUNTRY, YOU SHALL NOT REENTER THE UNITED
    STATES ILLEGALLY.  IF YOU DO RETURN, REPORT TO THE PROBATION
    OFFICER WITHIN THREE (3) DAYS, AND PRESENT DOCUMENTATION WHICH
    PROVIDES YOU ARE IN THE U.S. LEGALLY.
   -NOT OWN, USE OR POSSESS ANY DANGEROUS OR DEADLY WEAPONS,
    INCLUDING ANY FIREARMS, KNIVES OR OTHER CONCEALABLE WEAPONS.

   -PURSUANT TO PC SECTION 296, THE DEFENDANT IS ORDERED TO PROVIDE


       FOR ADDITIONAL INFORMATION PRESS PA1 KEY          * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                          PAGE NO.   11
 DEF NO.  01                          DATE PRINTED 12/20/21


    BUCCAL SWAB SAMPLES, A RIGHT THUMB PRINT, A FULL PALM PRINT

IMPRESSION OF EACH HAND, ANY BLOOD SPECIMENS OR OTHER BIOLOGICAL
SAMPLES AS REQUIRED BY THIS SECTION FOR LAW ENFORCEMENT
IDENTIFICATION.
-DEFENDANT IS INSTRUCTED BY THE COURT THAT HE/SHE IS PROHIBITED
 FROM OWNING, PURCHASING, RECEIVING, POSSESSING OR HAVING,UNDER
 HIS/HER CUSTODY OR CONTROL, ANY FIREARMS, AMMUNITION, AND
 AMMUNITION FEEDING DEVICES INCLUDING, BUT NOT LIMITED TO,
 MAGAZINES. DEFENDANT IS ORDERED TO RELINQUISH ALL FIREARMS IN
 THE MANNER PROVIDED IN PENAL CODE SECTION 29810.  DEFENDANT IS
 PROVIDED WITH A PROHIBITED PERSONS RELINQUISHMENT FORM.

-DEFENDANT ACKNOWLEDGES THAT HE/SHE UNDERSTANDS AND ACCEPTS EACH
 TERM AND CONDITION OF PROBATION.
-DEFENDANT ELECTS 45 DAYS COMMUNITY LABOR IN CREDIT OF 2 DAYS,
 TOTAL OF 43 DAYS OF COMMUNITY LABOR.
.


        FOR ADDITIONAL INFORMATION PRESS PA1 KEY      * MCAS * DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                PAGE NO.  12
 DEF NO.  01                DATE PRINTED 12/20/21

 THE COURT READS AND CONSIDERS PROBATION OFFICER'S REPORT
 FILED ON THIS COURT DATED.
 .
 SENTENCE AS TO COUNT 02 IS TO RUN CONCURRENT WITH COUNT 01.
 .
 THE TERMS AND CONDITIONS OF PROBATION IMPOSED IN COUNT 02
 ALSO APPLES TO COUNT 01.
 .
 ALL FINES AND FEES ARE TO BE PAID TO THE PROBATION DEPARTMENT.
 .
 THIS MATTER IS CONTINUED TO MAY 29, 2018, AT 08:30 A.M. IN
 THIS DEPARTMENT FOR PROHIBITED PERSONS RELINQUISHMENT FINDINGS.
 COUNT (02): DISPOSITION: CONVICTED
 ABSTRACT ISSUED ON 05/15/18 FOR COUNT 02
 DMV JUDGMENT CODE  JG
 NEXT SCHEDULED EVENT:
  05/29/18  830 AM  PPRF RPT - NON APPEARANCE   DIST VAN NUYS COURTHOUSE DEPT


        FOR ADDITIONAL INFORMATION PRESS PA1 KEY      * MCAS * DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                PAGE NO.  13
 DEF NO.  01                DATE PRINTED 12/20/21

  100
 05/15/18 EXONERATED, # SV504880923

 CUSTODY STATUS: BAIL EXONERATED
 CUSTODY STATUS: ON PROBATION

ON 05/29/18 AT 830 AM IN VAN NUYS COURTHOUSE DEPT 100

CASE CALLED FOR PPRF RPT - NON APPEARANCE
PARTIES: NEETU S. BADHAN-SMITH (JUDGE) TATEVIK MKITARYAN (CLERK)
          ENEDINA GONZALES     (REP) PAULA D. SELESNICK (DA)
DEFENDANT IS NOT PRESENT IN COURT, AND NOT REPRESENTED BY COUNSEL
 THE COURT READS AND CONSIDERS FIREARMS RELINQUISHMENT
 INVESTIGATION REPORT FILED ON THIS COURT DATE.
 .
 DEFENDANT HAS NOT FULLY COMPLETED A PROHIBITED PERSONS


          FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS * DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                PAGE NO. 14
 DEF NO. 01                       DATE PRINTED 12/20/21

  RELINQUISHMENT FORM.
  COURT ORDERS AND FINDINGS:
  -COURT FINDS THAT THE DEFENDANT DOES NOT OWN, POSSESS, OR HAVE
   UNDER HIS/HER CUSTODY OR CONTROL, FIREARMS THAT MUST BE
   RELINQUISHED.

  -"PROHIBITED PERSONS RELINQUISHMENT FORM FINDINGS" IS SIGNED BY
   THE COURT AND FILED THIS DATE.

NEXT SCHEDULED EVENT:
PROBATION IN EFFECT


ON 12/14/18 AT 1100 AM :

 NOTICE TO PROBATIONER AND REQUEST FOR CALENDAR DATE FOR


          FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS * DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                PAGE NO. 15
 DEF NO. 01                       DATE PRINTED 12/20/21

  POSSIBLE PROBATION VIOLATION RECEIVED FROM THE PROBATION
  DEPARTMENT AND GIVEN TO DEPARTMENT 100 TO BE HEARD AT THE NEXT
  HEARING DATE 010319. .EBROWN
 NEXT SCHEDULED EVENT:
  01/03/19  830 AM  POSSIBLE VIOL. OF PROBATION   DIST VAN NUYS COURTHOUSE
   DEPT 100


ON 01/03/19 AT 830 AM IN VAN NUYS COURTHOUSE DEPT 100

CASE CALLED FOR POSSIBLE VIOL. OF PROBATION
PARTIES: FRANK M. TAVELMAN (JUDGE) U-CHIN JANG  (CLERK)
                                     7

ELSA CARDENAS  (REP)     PAULA D. SELESNICK  (DA)
THE DEFENDANT FAILS TO APPEAR, WITHOUT SUFFICIENT EXCUSE AND NOT REPRESENTED BY
  COUNSEL
  PROBATION REVOKED


          FOR ADDITIONAL INFORMATION PRESS PA1 KEY          * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
  CASE NO. LA088106                    PAGE NO.  16
  DEF NO.  01                    DATE PRINTED 12/20/21

  REMAINING COUNTS REVOKED
  AS TO COUNT  (01):
   THE COURT READS AND CONSIDERS THE PROBATION REPORT FILED THIS
   DATE.
   .
   THE COURT ISSUES A BENCH WARRANT WITH BAIL SET AT NO BAIL.
  DMV ABSTRACT NOT REQUIRED
  NEXT SCHEDULED EVENT:
   BENCH/WARRANT ISSUED

01/03/19 BENCH WARRANT IN THE AMOUNT OF NO BAIL BY ORDER OF JUDGE FRANK M.
    TAVELMAN ISSUED. (01/03/19).



ON 01/14/19 AT  830 AM  IN VAN NUYS COURTHOUSE DEPT 100



          FOR ADDITIONAL INFORMATION PRESS PA1 KEY          * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
  CASE NO. LA088106                    PAGE NO.  17
  DEF NO.  01                    DATE PRINTED 12/20/21

  CASE CALLED FOR BENCH WARRANT HEARING
  PARTIES: NONE (JUDGE)  NEREIDA RUIZ  (CLERK)
          NONE     (REP)  NONE  (DDA)
  THE DEFENDANT FAILS TO APPEAR, WITH SUFFICIENT EXCUSE. (MISS-OUT) AND
   REPRESENTED BY JONATHAN J. KISSEL PRIVATE COUNSEL
   MATTER IS TRAILED TO 1-15-19.
  NEXT SCHEDULED EVENT:
   01/15/19  830 AM  BENCH WARRANT HEARING   DIST VAN NUYS COURTHOUSE DEPT 100

01/14/19 BENCH WARRANT IN THE AMOUNT OF NO BAIL   RECALLED. (01/14/19).



ON 01/15/19 AT  830 AM  IN VAN NUYS COURTHOUSE DEPT 100

CASE CALLED FOR BENCH WARRANT HEARING
PARTIES: MICHAEL K. KELLOGG (JUDGE)  NEREIDA RUIZ  (CLERK)

8

FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
CASE NO. LA088106                              PAGE NO.  18
DEF NO.  01                                   DATE PRINTED 12/20/21


        ELSA CARDENAS        (REP)  PAULA D. SELESNICK  (DA)
THE DEFENDANT FAILS TO APPEAR, WITH SUFFICIENT EXCUSE. (MISS-OUT) AND
  REPRESENTED BY JONATHAN J. KISSEL PRIVATE COUNSEL
BAIL SET AT NO BAIL
  MATTER IS CONTINUED TO 1-18-19 AT 8:30 AM IN DEPARTMENT 103
  FOR PROBATION VIOLATION HEARING SETTING.
  COURT ORDERS AND FINDINGS:
  -THE COURT ORDERS THE DEFENDANT TO APPEAR ON THE NEXT COURT DATE.
 NEXT SCHEDULED EVENT:
  01/18/19   830 AM  SETTING OF VIOLATION HEARING   DIST VAN NUYS COURTHOUSE
    DEPT 103


ON 01/18/19 AT  830 AM  IN VAN NUYS COURTHOUSE DEPT 103


CUSTODY STATUS: REMANDED TO CUSTODY


ON 01/18/19 AT  830 AM  IN VAN NUYS COURTHOUSE DEPT 103




        FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
CASE NO. LA088106                              PAGE NO.  19
DEF NO.  01                                   DATE PRINTED 12/20/21


 CASE CALLED FOR SETTING OF VIOLATION HEARING
 PARTIES: MICHAEL K. KELLOGG (JUDGE) LYNNE GARCIA  (CLERK)
        MARIANNE DER CLINT (REP)     KELLY I. KRAETSCH  (DA)
 DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY JONATHAN J. KISSEL PRIVATE
  COUNSEL
 THE DEFENDANT IS ADVISED OF RIGHTS RE HEARING ON VIOLATION AND WAIVES RIGHTS
TO A REVOCATION HEARING.
 DEFENDANT AND COUNSEL ADMIT TO VIOLATION OF PROBATION IN OPEN COURT.
 COURT FINDS DEFENDANT IN VIOLATION OF PROBATION.
  PROBATION REVOKED
 PROBATION REINSTATED
  PROBATION MODIFIED AS FOLLOWS:
 AS TO COUNT  (01):
   DEFENDANT TO ENROLL IN 3 MONTH RESIDENTIAL PROGRAM
   PROOF OF ENROLLMENT DUE 2-1-19 DPT.100 NON-APPEARANCE FOR DEFT.
 .
  RECOVERY NETWORK IS APPOINTED.


        FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
CASE NO. LA088106                              PAGE NO.  20
DEF NO.  01                                   DATE PRINTED 12/20/21


 .

                                      9

CONDITIONAL RELEASE #BN075833 ISSUED
 DEFENDANT MAY BE RELEASED TO REPRESENTATIVE OF RECOVERY NETWORK
DMV ABSTRACT NOT REQUIRED
NEXT SCHEDULED EVENT:
 02/01/19  830 AM  PROGRESS REPORT   DIST VAN NUYS COURTHOUSE DEPT 100
 THE DEFENDANT IS ADVISED OF RIGHTS RE HEARING ON VIOLATION AND WAIVES RIGHTS
TO A REVOCATION HEARING.
 DEFENDANT AND COUNSEL ADMIT TO VIOLATION OF PROBATION IN OPEN COURT.
COURT FINDS DEFENDANT IN VIOLATION OF PROBATION.
 PROBATION REVOKED
PROBATION REINSTATED
 PROBATION MODIFIED AS FOLLOWS:
AS TO COUNT  (02):
DMV ABSTRACT NOT REQUIRED
NEXT SCHEDULED EVENT:
 PROGRESS REPORT


         FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS * DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106              PAGE NO.  21
 DEF NO. 01               DATE PRINTED 12/20/21



ON 02/01/19 AT  830 AM  IN VAN NUYS COURTHOUSE DEPT 100

CASE CALLED FOR PROGRESS REPORT
PARTIES: FRANK M. TAVELMAN (JUDGE) NEREIDA RUIZ   (CLERK)
         LUANN MCKENZIE  (REP)    ANN KORBAN  (DA)
THE DEFENDANT FAILS TO APPEAR, WITHOUT SUFFICIENT EXCUSE AND REPRESENTED BY
 JONATHAN J. KISSEL PRIVATE COUNSEL
 PROBATION REVOKED
REMAINING COUNTS REVOKED
AS TO COUNT  (01):
 PER DEFENSE COUNSEL THE DEFENDANT IS NOT IN A RESIDENTIAL
 PROGRAM.
 BENCH WARRANT ORDERED ISSUED. BAIL SET AT NO BAIL.
DMV ABSTRACT NOT REQUIRED


         FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS * DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106              PAGE NO.  22
 DEF NO. 01               DATE PRINTED 12/20/21

 NEXT SCHEDULED EVENT:
 PROBATION REVOKED/BW ISSUED

02/01/19 BENCH WARRANT IN THE AMOUNT OF NO BAIL BY ORDER OF JUDGE FRANK M.
 TAVELMAN ISSUED. (02/01/19).

10

ON 11/02/20 AT  830 AM :

  AT THE REQUEST OF DEFENSE COUNSEL, THE MATTER IS PLACED ON
  CALENDAR AS INDICATED BELOW.
NEXT SCHEDULED EVENT:
  11/13/20  830 AM  PROBATION VIOLATION SENTENCING   DIST VAN NUYS COURTHOUSE
    DEPT 100


          FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
  CASE NO. LA088106                    PAGE NO.  23
  DEF NO.  01                          DATE PRINTED 12/20/21


ON 11/13/20 AT  800 AM  IN VAN NUYS COURTHOUSE DEPT 100

  CASE CALLED FOR PROBATION VIOLATION HEARING
  PARTIES: LELAND B. HARRIS (JUDGE)  MALQUELE GARCIA  (CLERK)
           SUZANNA FIRLOTTE      (REP) JASON M. QUIRINO  (DA)
  DEFENDANT IS  NOT PRESENT IN COURT, BUT REPRESENTED BY JONATHAN J. KISSEL
    PRIVATE COUNSEL
    PEOPLE ARE PRESENT VIA WEBEX.
  .
  DEFENSE COUNSEL IS PRESENT TELEPHONICALLY.
  .
  THE COURT READS AND CONSIDERS THE LETTER DATED 10/29/20 FROM
  THE FEDERAL PUBLIC DEFENDER.  THE DEFENDANT IS IN FEDERAL
  CUSTODY AWAITING A 20-YEAR SENTENCE.
  .
  AT THE REQUEST OF DEFENSE COUNSEL, THE BENCH WARRANT IS ORDERED


          FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
  CASE NO. LA088106                    PAGE NO.  24
  DEF NO.  01                          DATE PRINTED 12/20/21


  RECALLED AND QUASHED.
  .
  THE MATTER IS CONTINUED FOR PROBATION VIOLATION HEARING/STATUS
  TO JUNE 23, 2021 AT 8:30AM IN THIS DEPARTMENT.
  .
  PROBATION REMAINS REVOKED.
NEXT SCHEDULED EVENT:
  06/23/21  830 AM  PROBATION VIOLATION HEARING   DIST VAN NUYS COURTHOUSE
    DEPT 100

11/13/20 BENCH WARRANT IN THE AMOUNT OF NO BAIL   RECALLED. (11/13/20).

CUSTODY STATUS: DEFENDANT REMAINS ON OWN RECOGNIZANCE

11

ON 06/23/21 AT  830 AM  IN VAN NUYS COURTHOUSE DEPT 100

          FOR ADDITIONAL INFORMATION PRESS PA1 KEY      * MCAS * DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
CASE NO. LA088106              PAGE NO.  25
DEF NO.  01              DATE PRINTED 12/20/21

CASE CALLED FOR PROBATION VIOLATION HEARING
PARTIES: DAVID YAROSLAVSKY (JUDGE)  MAGALI ANDERSON  (CLERK)
          DEBBIE WOLLMAN     (REP)  EDWARD J. NISON  (DA)
DEFENDANT IS  NOT PRESENT IN COURT, BUT REPRESENTED BY JONATHAN J. KISSEL
  PRIVATE COUNSEL
DEFENDANT APPEARING BY COUNSEL PURSUANT TO PENAL CODE SECTION 977 ET SEQ, BY
  JONATHAN J. KISSEL PRIVATE COUNSEL
  DEFENSE COUNSEL APPEARING VIA WEBEX ON BEHALF OF DEFENDANT
  PURSUANT TO PENAL COE SECTION 977(B).
.
DEFENDAMT IS AWAITING SENTENCING IN FEDERAL COURT.
.
PROBATION VIOLATION HEARING IS CONTINUED TO THE DATE BELOW.
.
ENTRY BY: A. DOMIN
WAIVES STATUTORY TIME.
NEXT SCHEDULED EVENT:

          FOR ADDITIONAL INFORMATION PRESS PA1 KEY      * MCAS * DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
CASE NO. LA088106              PAGE NO.  26
DEF NO.  01              DATE PRINTED 12/20/21

 07/13/21   830 AM  PROBATION VIOLATION HEARING   DIST VAN NUYS COURTHOUSE
  DEPT 100

CUSTODY STATUS: DEFENDANT REMAINS ON OWN RECOGNIZANCE

ON 07/13/21 AT  830 AM  IN VAN NUYS COURTHOUSE DEPT 100

CASE CALLED FOR PROBATION VIOLATION HEARING
PARTIES: FRANK J. JOHNSON (JUDGE)  MALQUELE GARCIA  (CLERK)
          DEBBIE WOLLMAN     (REP)  EDWARD J. NISON  (DA)
DEFENDANT IS  NOT PRESENT IN COURT, BUT REPRESENTED BY JONATHAN J. KISSEL
  PRIVATE COUNSEL
  DEFENDANT IS AWAITING SENTENCING IN FEDERAL COURT.
  MATTER IS CONTINUED AS INDICATED BELOW.
  PROBATION REMAINS REVOKED.
NEXT SCHEDULED EVENT:

FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                      PAGE NO.  27
 DEF NO.  01                            DATE PRINTED 12/20/21


 07/13/22   830 AM  PROBATION VIOLATION HEARING   DIST VAN NUYS COURTHOUSE
    DEPT 100

 CUSTODY STATUS: DEFENDANT REMAINS ON OWN RECOGNIZANCE


 ON 12/13/21 AT  900 AM :

   DEFENSE MOTION TO ADVANCE AND ADMIT PROBATION VIOLATION IS
   FILED. CASE IS ADVANCED TO DECEMBER 16, 2021 IN THIS DEPARTMENT.
   THE PREVIOUSLY SET DATE OF JULY 13, 2022 IS VACATED.
   PROBATION REMAINS REVOKED.
 NEXT SCHEDULED EVENT:
  12/16/21   830 AM  PROBATION VIOLATION HEARING   DIST VAN NUYS COURTHOUSE
    DEPT 100




        FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                      PAGE NO.  28
 DEF NO.  01                            DATE PRINTED 12/20/21


 ON 12/16/21 AT  830 AM  IN VAN NUYS COURTHOUSE DEPT 100

   CASE CALLED FOR PROBATION VIOLATION HEARING
   PARTIES: DAVID YAROSLAVSKY (JUDGE) MALQUELE GARCIA   (CLERK)
        DEBBIE WOLLMAN  (REP)     EDWARD J. NISON  (DA)
 DEFENDANT IS  NOT PRESENT IN COURT, BUT REPRESENTED BY JONATHAN J. KISSEL
   PRIVATE COUNSEL
   THE DEFENDANT IS ADVISED OF RIGHTS RE HEARING ON VIOLATION AND WAIVES RIGHTS
 TO A REVOCATION HEARING.
   DEFENDANT AND COUNSEL ADMIT TO VIOLATION OF PROBATION IN OPEN COURT.
 COURT FINDS DEFENDANT IN VIOLATION OF PROBATION.
   PROBATION REVOKED
   PROBATION TERMINATED
 AS TO COUNT  (01):
   MOTION TO ADVANCE AND ADMIT PROBATION VIOLATION FILED
   12/13/21 BY DEFENSE COUNSEL.




        FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS *  DFS223 10:02:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                      PAGE NO.  29
 DEF NO.  01                            DATE PRINTED 12/20/21

 .

file:///lsngadminfs.cac.fd.pvt/SHARESCAN/Poblano2/Tomasovich%20LA088106%20Docket.txt[12/20/2021 10:18:10 AM]

THE COURT ORDERS THE BENCH WARRANT RECALLED AND QUASHED.
.
THE COURT FINDS THE DEFENDANT IN VIOLATION OF PROBATION
FOR FAILURE TO OBEY ALL LAWS.
.
{DEFENDANT IN FEDERAL CUSTODY REFERENCE CASE NO. CR 19-53-JFW}
DMV ABSTRACT NOT REQUIRED
NEXT SCHEDULED EVENT:
 PROCEEDINGS TERMINATED

END CASE DETAIL INQUIRY
            FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS *  DFS223 10:04:43 PAGE
REQUESTED NOT CONTAINED IN CURRENT MESSAGE
 CASE NO. LA088106                   PAGE NO.  29
 DEF NO.  01                         DATE PRINTED 12/20/21

 .
 THE COURT ORDERS THE BENCH WARRANT RECALLED AND QUASHED.
 .
 THE COURT FINDS THE DEFENDANT IN VIOLATION OF PROBATION
 FOR FAILURE TO OBEY ALL LAWS.
 .
 {DEFENDANT IN FEDERAL CUSTODY REFERENCE CASE NO. CR 19-53-JFW}
 DMV ABSTRACT NOT REQUIRED
 NEXT SCHEDULED EVENT:
  PROCEEDINGS TERMINATED

 END CASE DETAIL INQUIRY
            FOR ADDITIONAL INFORMATION PRESS PA1 KEY        * MCAS *

14

# Exhibit B – Ventura County Superior Court Case No. 2013016774 Docket

## Superior Court of California
## County of Ventura

| Name | Tomasovich, Trent Michael | | | Case Number | 2013016774 |
|---|---|---|---|---|---|
| Citation Number | | Violation Date | 05/27/2013 | Case Status | Convicted |
| Court Location | Ventura | Appearance / Due Date | | Offense Level | Misdemeanor |
| | | Disposition Date | 12/23/2016 | Mandatory Appearance | No |
| | | | | Case Balance | $60.00 |

## Docket Information

| Docket Date | Docket Description |
|---|---|
| 03/07/2017 | Unused subpoenaed records from Custodian of Records, Simi Valley Hospital and Health Care Services received on 08/15/14 forwarded to Exhibits for destruction. |
| 12/28/2016 | Copy of "Order for Dismissal" sent to Paul Tyler , the attorney of record. |
| 12/28/2016 | JUS 8715A Subsequent Action Disposition Information sent to Department of Justice. |
| 12/28/2016 | Entry made to delete DOJ 8715A Subsequent transaction on case. |
| 12/28/2016 | File located to Ventura Records. |
| 12/28/2016 | As a result of court granting expungement request, an on-line abstract has been transmitted to DMV. |
| 12/23/2016 | Order for Dismissal (Penal Code Section 17, 1203.4, 1203.4a, 1203.41) filed on 12/23/16 . |
| 12/23/2016 | Order for Dismissal signed by Judge/Commissioner Redmond, William R . |
| 12/23/2016 | Request For Expungement is Granted . |
| 12/23/2016 | Probation having expired (or previously been terminated) and in accordance with the provision of section 1203.4 of the Penal Code, the verdict, or plea of guilty or nolo heretofore rendered or made as count(s) 1 , is set aside and a plea of not guilty is entered and said count(s) is dismissed. |
| 12/23/2016 | Probation having expired (or previously been terminated) and in accordance with the provision of section 1203.4 of the Penal Code, the verdict, or plea of guilty or nolo heretofore rendered or made as count(s) 2 , is set aside and a plea of not guilty is entered and said count(s) is dismissed. |
| 12/09/2016 | Petition and Order for Dismissal (Penal Code Section 17, 1203.4, 1203.4a) sent to Judge/Commissioner Redmond, William R chambers. |
| 12/09/2016 | CLETS Report sent to Judge/Commissioner Redmond, William R chambers. |
| 12/09/2016 | File is located to Judge's Chambers for Signature ; Commissioner Redmond for Expungement Request . |
| 12/02/2016 | A CII RAP Sheet is required |
| 12/01/2016 | By 01/02/17 you are to pay an Expungement-Misdemeanor fee of $60.00, pursuant to 1203.4(e) PC. Pay your fee to Superior Court Collection Unit, at one of the following locations: *Appear at 800 South Victoria Avenue, Room 205, Ventura or mail to P.O. Box 6489, Ventura, California 93006-6489; phone (805) 639-5010. *Appear at or mail to 3855-F Alamo Street, Window 5 or 6, Simi Valley, California 93065. *Appear at the Juvenile Courthouse, Room 122, 4353 E. Vineyard, Oxnard |
| 12/01/2016 | Petition for Dismissal (Penal Code 17, 1203.4, 1203.4a, 1203.41) filed on |

| | |
|---|---|
| | 12/01/16 . |
| 12/01/2016 | Order for Dismissal is received. |
| 09/01/2016 | File located to Ventura Records. |
| 08/26/2016 | At the request of Paul , from private attorney's office Tyler , case is calendared to: 08/26/16 at 09:00 AM in Courtroom 10 for Motion For Early Termination Of Probation . |
| 08/26/2016 | Motion For Early Termination Of Probation Heard in Courtroom 10 on Aug 26, 2016 at 09:00 AM . |
| 08/26/2016 | Judge - Lund, Roger L . |
| 08/26/2016 | Judicial Assistant - Barreto, S . |
| 08/26/2016 | Digital recorder - 09:44 AM . |
| 08/26/2016 | The defendant is present by Attorney Tyler . |
| 08/26/2016 | Attorney appearing for the defendant with 977 PC authority. |
| 08/26/2016 | Deputy District Attorney Carr, Taylor present. |
| 08/26/2016 | Defense request for early termination of probation is granted . |
| 08/26/2016 | Court orders probation to be successfully terminated on 08/26/16 . |
| 08/26/2016 | File is located to Judicial Assistant Supervisor ; JUS . |
| 08/26/2016 | DD1 sent to DMV. Return code: 800 |
| 08/26/2016 | Case Closed. |
| 07/28/2016 | At the request of Paul , from private attorney's office P Tyler , case is calendared to: 07/28/16 at 01:30 PM in Courtroom 10 for Motion For Early Termination Of Probation . |
| 07/28/2016 | Motion For Early Termination Of Probation Heard in Courtroom 10 on Jul 28, 2016 at 01:30 PM . |
| 07/28/2016 | Judge - Borrell, Mark S . |
| 07/28/2016 | Judicial Assistant - Ramirez, A . |
| 07/28/2016 | Digital recorder - 02:02 PM . |
| 07/28/2016 | The defendant is present by Attorney Tyler . |
| 07/28/2016 | Attorney appearing for the defendant with 977 PC authority. |
| 07/28/2016 | Deputy District Attorney Cunningham, Philippa present. |
| 07/28/2016 | The case is off calendar-no action is taken. |
| 07/28/2016 | File located to Ventura Records. |
| 07/16/2015 | Motion To Convert From Formal Prob. To Conditional Revocable Release Heard in Courtroom 10 on Jul 16, 2015 at 04:00 PM . |
| 07/16/2015 | Judge - Lund, Roger L . |
| 07/16/2015 | Judicial Assistant - Barreto, S . |
| 07/16/2015 | Probation Officer's request re: convert to CRR probation is granted by the Court. |
| 07/16/2015 | The court orders probation modified as follows: |
| 07/16/2015 | Probation is ordered modified from Formal to Conditional Revocable Release. Your probation terms are modified as follows: |
| 07/16/2015 | Court orders probation term PAPO4 ; Report to Probation Officer deleted. |
| 07/16/2015 | Monthly probation fee is vacated. Defendant is responsible for any fee balance owing. |
| 07/16/2015 | Report to court any arrest, citation, probation violation or change of address within 10 days, thereafter. Report in writing to: Ventura County Superior |

| | |
|---|---|
| | Court, Post Office Box 6489, Ventura, California 93006-6489. Include your name and case number. |
| 07/16/2015 | All terms and conditions previously imposed remain in full force and effect. |
| 07/16/2015 | The case file is not in the courtroom for these proceedings. |
| 07/07/2015 | Case placed on calendar Probation Officer's Request 07/16/15 at 04:00 PM in Courtroom 10 for Motion To Convert From Formal Prob. To Conditional Revocable Release . |
| 02/11/2015 | Remittance from receipt # 5332117 received in the amount of $343.63 . |
| 11/27/2014 | Remittanace from receipt # 5248488 received in the amount of $3500.00 . |
| 11/14/2014 | Satellite payment from receipt # 5208987 in the amount of $155.00 approved. |
| 11/13/2014 | Satellite Payment from receipt # 5208987 received in the amount of $155.00 |
| 11/13/2014 | Subpoenaed records from Simi Valley Hospital and Health Care Services returned by District Attorney and lodged in file. |
| 11/05/2014 | EARLY DISPOSITION CONFERENCE Heard in Courtroom 12 on Nov 05, 2014 at 01:30 PM . |
| 11/05/2014 | Judge - Murphy, Patricia M . |
| 11/05/2014 | Judicial Assistant - Lozano, G . |
| 11/05/2014 | Court Reporter - Peters, Anne is present. |
| 11/05/2014 | The defendant is present with Attorney Tyler . |
| 11/05/2014 | Deputy District Attorney L. Malan present. |
| 11/05/2014 | On motion of the Court, Pursuant to prop 47, count 1 and 2 are reduced to a misdemeaner . |
| 11/05/2014 | Count(s) 1, 2 reduced to a misdemeanor on motion of the Court . |
| 11/05/2014 | The defendant was advised: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States (1016.5 PC)". The defendant was advised of charge(s), rights, and consequences including maximum and minimum penalties. After inquiry the court found that the defendant understood the nature of the charge(s), the consequences of conviction and his/her rights, and that he/she expressly, voluntarily, intelligently and understandingly waived his/her rights. |
| 11/05/2014 | The defendant is advised of the right to trial by court or jury; right to confront and cross-examine witnesses against him/her; and privilege against self-incrimination |
| 11/05/2014 | A guilty plea is entered as to count(s) 2, 3 . Pursuant to Penal Code Section 1465.8, each violation resulting in a conviction will be assessed a $40.00 security fee. Pursuant to Government Code Section 70373, a Criminal Conviction Assessment fee of $35 on every conviction for infractions, and $30.00 on every conviction for misdemeanors and felonies will be imposed. Pursuant to Government Code Section 76000.10,an Emergency Med Air Transport fee of $4.00 will be added for each convicted vehicle code violation. |
| 11/05/2014 | The Court orders the remaining counts to be dismissed. |
| 11/05/2014 | Waiver of Constitutional Rights filed and incorporated in court's file. |
| 11/05/2014 | The Imposition of Sentence is suspended. |
| 11/05/2014 | The Court has released you on formal probation for 36 months. You are subject to and must obey each of the following conditions. If you fail to do so, the Court may impose any sentence previously suspended. If you fulfill all of the conditions you may then apply for a dismissal of the charges. |

| 11/05/2014 | You must report to the Probation Agency, 800 South Victoria Avenue, Ventura, California, Criminal Justice Center (Sheriff's Building) Room A, Second Floor. Report immediately after leaving court or upon release from custody. Bring this form with you. You must comply with the following terms and conditions: 1. Be under the supervision of a probation officer and report as directed. 2. Maintain regular employment as approved by the probation officer. 3. Not leave your county of residence for more than 72 hours or change your residence without prior approval by your probation officer. You shall not leave the State of California without prior permission of your probation officer. If you are on Felony Formal Probation then the following applies: "The defendant waives extradition to the State of California from any jurisdiction in or outside the United States where the defendant may be found. The defendant further agrees that he/she will not contest any effort by any jurisdiction to return himself/herself to the State of California". 4. Participate as directed in any treatment program designated by the probation officer and authorize release of information between your probation officer and any treatment program. After meeting with Probation, if you have any concerns, call 805-388-4400. |
| --- | --- |
| 11/05/2014 | You are to obey all laws, city, county, state and federal. |
| 11/05/2014 | Not operate a motor vehicle with any intoxicant in your body. |
| 11/05/2014 | You shall submit to and complete tests of your breath, blood, urine, or saliva, when requested by a peace officer or probation officer. |
| 11/05/2014 | As outlined in California Health and Safety Code Section 11837.2(a)(1), the California Department of Motor Vehicles does not recognize on-line DUI programs as a substitute for a licensed DUI program. Report immediately to the Driving Under the Influence Program (First Conviction Program) for 90 Day(s) . Within five (5) days call one of the programs to make an appointment for orientation. Oxnard DUI Programs - 1911 Williams Drive, Oxnard (Suite C at the back of the building) (805) 981-9210 Ventura DUI Programs - 5850 Thille Street, Suite 105, Ventura (805) 662-1840 Thousand Oaks DUI Programs - 125 W. Thousand Oaks Blvd, Suite 400, Thousand Oaks (805) 777-3506 Simi DUI Programs - 3150 E. Los Angeles Ave., Simi Valley (805) 520-0305 Fillmore DUI Programs - 823 Ventura Street, Suite 250, Fillmore (805) 524-8645 You shall comply with any directives of Driving Under the Influence Program. Failure to report within five (5) days is a violation of probation. Failure to complete enrollment within 21 days will require a return to court and additional cost. |
| 11/05/2014 | Pay a total fine of $2,377.00 . If you have been convicted of a vehicle code section violation, failure to pay this fine will result in a suspension of your driver's license. |
| 11/05/2014 | Not drive unless properly licensed and insured. |
| 11/05/2014 | You are to pay Alcohol Abuse & Prev fee of $50.00 . |
| 11/05/2014 | You are to pay Supervision PROBD fee of $794.00 . |
| 11/05/2014 | You are to pay Crim Justice Admin fee of $443.36 . |
| 11/05/2014 | You shall pay a fine of $60.56 to the State Restitution Fund. |
| 11/05/2014 | You shall pay a fine of $89.44 to the State Restitution Fund (DUI next prior). |
| 11/05/2014 | As a result of your conviction you must pay a $40.00 Security Fee in addition to any other fines and / or fees. |
| 11/05/2014 | You are to report immediately (unless in custody) to the Collection Unit in Room 205 or Room 107 if you are exiting a first floor courtroom. You are to pay as directed by the Collection Unit. You are to pay an administrative (ARF) fee of $35.00. Pay your fine and/or fees to Ventura Superior Court Collection Unit, at one of the following locations: *Appear at 800 South Victoria Avenue, Room 205, Ventura or mail to P.O. Box 6489, Ventura, California 93006-6489; phone (805) 639-5010. *Appear at or mail to 3855-F Alamo Street, Window 5 or 6, Simi Valley, California 93065. *Appear at the Juvenile Courthouse, Room |

| | 122, 4353 E. Vineyard, Oxnard If you are in custody, you must report to Superior Court Collection Unit within 5 days from the date of your release. |
|---|---|
| 11/05/2014 | The fee ordered is a civil judgment and can be enforced by execution of wages and property. |
| 11/05/2014 | You shall not use or possess any narcotics, dangerous drugs, controlled substances, marijuana or paraphernalia unless prescribed. |
| 11/05/2014 | You shall not associate with any person who is using or trafficking in any controlled substance, including marijuana. |
| 11/05/2014 | You shall not alter, adulterate, nor attempt in any manner to falsify any bodily fluids submitted for the determination of the presence of controlled substances, including marijuana. |
| 11/05/2014 | You will hereby consent to any tests to determine the presence of controlled substances, including marijuana, at any time by a peace officer or probation officer. |
| 11/05/2014 | Now consent to a search of your person, vehicle, residence, business, or any other personal or real property under your control for controlled substances, including marijuana and related paraphernalia, by a peace officer or probation officer at any time, with or without a search warrant, warrant of arrest, or reasonable cause. |
| 11/05/2014 | You are ordered to serve 60 Day(s) with credit for 0 Day(s) actual time served in the Ventura County Jail. |
| 11/05/2014 | Report to the Sheriff to begin your jail sentence on 01/07/15 at 07:00 AM . Please be advised that the personal property you may bring is limited to the following: 1) Valid driver's license or identification card 2) Court papers 3) Car keys 4) Cash (no personal checks-money will be put into trust account for commissary use). |
| 11/05/2014 | Defendant accepts probation as stated by court. |
| 11/05/2014 | The court orders the defendant released on probation. |
| 11/05/2014 | Signature Required |
| 11/05/2014 | File located to Ventura Records. |
| 11/05/2014 | DD1 sent to DMV. Return code: 800 |
| 10/02/2014 | EARLY DISPOSITION CONFERENCE Heard in Courtroom 12 on Oct 02, 2014 at 01:30 PM . |
| 10/02/2014 | Judge - Murphy, Patricia M . |
| 10/02/2014 | Judicial Assistant - Lozano, G . |
| 10/02/2014 | Court Reporter - Kalla, Deborah-Ann D is present. |
| 10/02/2014 | The defendant is present with Attorney Tyler . |
| 10/02/2014 | Deputy District Attorney Karr present. |
| 10/02/2014 | Defense request for continuance is granted. |
| 10/02/2014 | Case continued to 11/05/14 at 01:30 PM in Courtroom 12 for EARLY DISPOSITION CONFERENCE . |
| 10/02/2014 | Time waived to 11/05/14 plus 10 court days. |
| 10/02/2014 | Your release on your own recognizance continues. |
| 10/02/2014 | The court orders you to appear. |
| 10/02/2014 | File located to Ventura Records. |
| 08/27/2014 | EARLY DISPOSITION CONFERENCE Heard in Courtroom 12 on Aug 27, 2014 at 01:30 PM . |
| 08/27/2014 | Judge - Murphy, Patricia M . |
| 08/27/2014 | Judicial Assistant - Lozano, G . |

| | |
|---|---|
| 08/27/2014 | Court Reporter - Biter, Denise is present. |
| 08/27/2014 | The defendant is present with Attorney Kissell for Tyler . |
| 08/27/2014 | Deputy District Attorney Karr present. |
| 08/27/2014 | Defense request for continuance is granted. |
| 08/27/2014 | Case continued to 10/02/14 at 01:30 PM in Courtroom 12 for EARLY DISPOSITION CONFERENCE . |
| 08/27/2014 | Time waived to 10/02/14 plus 10 court days. |
| 08/27/2014 | Your release on your own recognizance continues. |
| 08/27/2014 | The court orders you to appear. |
| 08/27/2014 | The parties stipulate that the subpoenaed records from Unmarked docs may be released to People to be opened, copied, and returned to the court by 10/02/14 without affecting its admissibility. |
| 08/27/2014 | File located to Ventura Records. |
| 08/15/2014 | Subpoenaed records received from Simi Valley Hospital . |
| 08/15/2014 | Subpoenaed records from Simi Valley Hospital forwarded to Records to place in court file. |
| 07/17/2014 | Arraignment First Appearance Heard in Courtroom 12 on Jul 17, 2014 at 09:00 AM . |
| 07/17/2014 | Judge - Murphy, Patricia M . |
| 07/17/2014 | Judicial Assistant - Lozano, G . |
| 07/17/2014 | Court Reporter - Solis, Becky A is present. |
| 07/17/2014 | Attorney of record Tyler, Paul B for defendant. |
| 07/17/2014 | The defendant is present with Attorney Tyler . |
| 07/17/2014 | Deputy District Attorney Karr present. |
| 07/17/2014 | Defense request for continuance is granted. |
| 07/17/2014 | Case continued to 08/27/14 at 01:30 PM in Courtroom 12 for EARLY DISPOSITION CONFERENCE . |
| 07/17/2014 | Time waived to 08/27/14 plus 10 court days. |
| 07/17/2014 | Agreement of defendant to appear personally (1318 PC): I promise to appear at all times and places as ordered by the judge or magistrate before whom my proceedings are pending. I promise not to leave this state without prior approval of the court. I waive my right to extradition if I fail to appear as requested and am apprehended outside of this state. |
| 07/17/2014 | The court orders you to appear. |
| 07/17/2014 | Signature Required |
| 07/17/2014 | File located to Ventura Records. |
| 06/20/2014 | Complaint submitted for filing by VCDA on 6/20/2014 00:00:00 . |
| 06/20/2014 | Tomasovich, Trent Michael filed as name of record. |
| 06/20/2014 | Felony charge 11350(a) HS filed as count 1 with violation date of 05/27/13 00:47:00 . |
| 06/20/2014 | Felony charge 11377(a) HS filed as count 2 with violation date of 05/27/13 00:47:00 . |
| 06/20/2014 | Misdemeanor charge 23152(a) VC filed as count 3 with violation date of 05/27/13 00:47:00 . |
| 06/20/2014 | Misdemeanor charge 11364.1(a) HS filed as count 4 with violation date of 05/27/13 00:47:00 . |

| 06/20/2014 | Misdemeanor charge 11550(a) HS filed as count 5 with violation date of 05/27/13 00:47:00 . |
|---|---|
| 06/20/2014 | Case calendared to 07/17/14 at 09:00 AM in 12 for Arraignment First Appearance . |
| 06/20/2014 | Case Marked as Early Disposition Conference. |
| 06/04/2013 | No complaint having been filed, the defendant is discharged on this case. Court orders bail bond AS25-212946 exonerated. Please note that the District Attorney may file a complaint at a later date using this same case number, pursuant to statute of limitations. |
| 05/28/2013 | Bail Bond Number AS25-212946 posted in the amount of $20,000.00 by BIKER of AMERICAN . Original bail bond sent to Fiscal |
| 05/28/2013 | Booking charges are: HS 11350(a), HS 11377(a), VC 23152(a), HS 11364.1(a) |
| 05/28/2013 | Upon conviction assess CJAF fee of $414.82. |

# Exhibit C -
# Email from Ventura
# County D.A.'s Office re:
# November 17, 2018 Arrest

## Isabel Bussarakum

| | |
|---|---|
| **From:** | Harman, Chris <Chris.Harman@ventura.org> |
| **Sent:** | Friday, December 3, 2021 1:39 PM |
| **To:** | Isabel Bussarakum |
| **Subject:** | RE: Ventura Court Docket # 2018039417 |

Hi Isabel:

It was a pleasure speaking with you this afternoon. No case was filed against your client for his 11-17-2018 arrest under docket number 2018039417. The statute of limitations has since expired and no charges can now be filed for the charges he was arrested for.

If you need a letter on formal letterhead, let me know and I will either send you the letter or an email explaining that I can't.

Chris
Christopher S. Harman
Supervising Attorney, Major Crimes Unit
District Attorney's Office
County of Ventura
Hall of Justice
800 South Victoria Avenue, Suite 314
Ventura, CA 93009
(805) 654-2062



**From:** Isabel Bussarakum <Isabel_Bussarakum@fd.org>
**Sent:** Friday, December 3, 2021 1:33 PM
**To:** Harman, Chris <Chris.Harman@ventura.org>
**Subject:** Ventura Court Docket # 2018039417

Hi Chris,

I just got off the phone with you about the above-referenced case involving Trent Tomasovich. If you can provide a letter indicating that the D.A. has declined to prosecute this case and the statute of limitations has run, that would be very helpful. If not, I will pull a certified copy of the court docket. Thanks so much.

Isabel Bussarakum
Office of the Federal Public Defender
321 East 2nd Street

Los Angeles, California 90012
Tel: (213) 894-2854
Fax: (213) 894-0081

# Exhibit D -
# Letters of Support

## **Table of Contents**

| **Author** | **Relationship** | **Page No.** |
|---|---|---|
| Ruth Elizabeth ("Beth") Tomasovich | Mother (Adoptive) | 1-5 |
| Theodore ("Ted") Tomsaovich | Father (Adoptive) | 6-7 |
| Jessica ("Jessie") Tomasovich | Sister (Adoptive) | 8-10 |
| Karen Lembke | Cousin (Adoptive) | 11-12 |
| Bridget Hollander | Family Friend | 13-15 |
| Carlton Hollander | Family Friend | 16-17 |
| Linda Gustafson | Family Friend | 18-20 |
| Frederic ("Ric") Long | *De Facto* Uncle (Adoptive) | 21 |
| Phyllis Gary | Aunt (Adoptive) | 22 |
| Gail and Miller and Lembke | Aunt and Uncle (Adoptive) | 23 |
| Jamie Eddinger | Biological Mother | 24 |
| Charles W. Allen, LMFT | Former Therapist | 25-26 |
| Christopher Howard | Former Director, Ethos Recovery | 27-28 |
| Theodoros Kapogianis | Friend from Drug Treatment | 29-30 |
| Honida Alqadi | Mother of Ex-Girlfriend | 31 |

Beth Tomasovich

Washougal, Wa ███████
███████@sbcglobal.net
360█████████ (home)
626█████████ (cell)
███████@sbcglobal.net

Re: Trent Tomasovich, our son

January 6, 2020

Dear Honorable Judge Walter,

Trent arrived in our lives suddenly and joyfully with a phone call in April 1991. We connected with Jamie, his birthmother, and she said she was 7 ½ months pregnant. Two days later, on April 28, 1991, she called to say "Hurry, hurry", and she was in labor. We drove to Tucson immediately. Trent was an answer to our prayers and we loved him from the first moment. After many doctors and lawyers, our family was now complete. Jessie, 4 years old, and her new brother Trent.

Trent is an empathetic and compassionate person. Since he was young, he had an understanding for those that had less. When he was five, he made friends with a homeless man, Diego, who was often on the street near our grocery store. He often gave him part of his meal from the local B-Man's burger, or a Starbucks drink, or fresh fruit from Ralphs. He always gave him a friendly smile and wave.

Since 1ˢᵗ grade, Trent had a big group of friends. His 2ⁿᵈ grade teacher told me that she never had seen such a tight, loyal group of 6 year olds. And, as kind as they were, she would recommend they never be all together in the same class again! His teachers always spoke of him with a huge smile on their face.

My husband's West Virginia mother, Baba, as her nine grandkids called her, was amazed that Trent was the one grandchild that truly tried hard to learn to crochet – one of her great talents. He also learned how to make her signature cabbage rolls. He memorized her recipe and would make them for us and later his California friends.

Our widowed neighbor across the street often commented that our Christmas tree in the front window always brought her happiness. For many years, Jessie and Trent would decorate a small living tree for her and deliver it at Christmas time. Trent would often organize his friends to join in and it became a nice neighborhood tradition.

During Trent's freshman and junior years in high school, he went with his Young Life group to Mexico at spring break to help build houses for low income families. They were very proud of the pictures of handing the keys over to the new homeowners.

Trent retained his big group of friends in high school. Our huge oak tree in the front yard was happily toilet papered countless times during middle and high school. Our home was a gathering place for many. We ate dinner together most nights and often had our kid's friends at our table.

1

When Trent went into detox and rehab at The Axis House in Culver City - on our Sunday visits, many of the clients came up to us and said how helpful Trent was in their recovery. He would listen, not judge and just sit with them. He is blessed with an enormous heart and huge hugs.

Trent always loved animals. From the baby bluebird he nursed to health at age six, to Jack, our 12 year old Golden Retriever that he cared for, loved and buried. Remington, Trent's rescue beagle, has been through him in his addiction, sobriety and addiction. Remy is still a huge part of our lives and a daily warm connection with Trent.  When Trent was dog grooming, his clients – both human and pet – expressed their appreciation for his kindness.

What happened is an irreversible, terrible tragedy. We are heartbroken. Trent has told me that he understands the gravity of these charges and the consequences. He is deeply remorseful. He never intended to hurt anyone.

Trent is so much more than the reason he is here today. Trent has a solid soul. He has potential to bring out the goodness in others and share his story. He has seen happiness, rain, the needle and hopefully happiness again.

Thank you for your time.

Sincerely,

Beth Tomasovich

Beth Tomasovich

2

















5



Ted Tomasovich
█████
Washougal, WA █████
█████@comcast.net
(360) █████ home
(626) █████ cell

January 24, 2020

Re: Trent Tomasovich, Case No.CR 19-53-JFW

Honorable Judge Walter,

I am Ted Tomasovich, Trent's father. I am 73 years old. I was born in Steubenville, Ohio on December 10, 1946.  I was raised and lived in Weirton, West Virginia until I was 17 when I left for Georgia Tech on a full basketball scholarship. My brother, Mike, and I are members of the Georgia Tech Sports Hall of Fame. After graduation, I was signed by the Cincinnati Reds to a minor league contract.  After an unremarkable two-year stint, I became a teacher at Miami Senior High School for two years. In January 1974, through a very close Georgia Tech friend I got a job in San Francisco with Cabot, Cabot & Forbes, a private national commercial real estate developer. With the company, I worked in San Francisco, San Diego and finally in Los Angeles. I was vice president/regional manager of Southern California from January 1978 until June 1988. I left to form my own company with my good friend, Ichiro Takeda, a Japanese citizen, focusing on commercial real estate investment. We sold our last property, the Westlake Village Golf Course, in August of 2013.

My wife Beth and I moved to Washougal, Washington in August of 2014. Beth is a Duck (University of Oregon) graduate from Eugene, Oregon and wanted to move back to the northwest to be close to her two sisters who live in Eugene and Portland, Oregon.

Both our daughter, Jessie, and Trent are adopted. We were ecstatic to adopt them. I felt that the fact Jessie was adopted helped Trent accept his adoption positively. They developed a close sister/brother relationship which endures to this day.

We raised our kids in San Marino, California in a loving environment. Trent had a normal, fun childhood. He was intelligent, athletic, outgoing and had a great circle of friends. He was active in school and played baseball, football, basketball and soccer.

In high school Trent was a starter on the football team and did well. Unfortunately, he had a concussion that was fairly severe. We decided he should give up football to be safe. Our relationship was not affected by this decision. In fact, I was very proud of him for trying any sport and working hard scholastically. However, leaving football gave him more unstructured time to use drugs, which apparently he did. This caused us great concern.

His first episode with drugs was when he was 17 years old in February 2006. He and several friends were picked up by San Marino PD for possession and use of marijuana. Ominously this was the start of his increasing drug use. In October 2007, Trent received a traffic violation and went to traffic school. By

December 2007 his anxiety had increased significantly and he started seeing Joe Dilly, a psychologist. In June 2008, after a long weekend of drug use, he was taken by San Marino PD to Las Encinas Hospital for a 72 hour hold because of his behavior. As he continued his drug use, we did an intervention and sent him to a wilderness program in Utah after which he was placed in a sober living house in Ogden, Utah at which he received his high school diploma. He did extremely well in both programs.

He returned home in April 2009. When Trent was 18, he contacted his birth family. When we adopted Trent, Beth and I were not aware of his birthparents' drug use history or the continuing drug use of his birthmother and incarceration of his birthfather. In July 2009, Trent visited his birthmother and birth siblings in Tucson. In a phone call initiated by Trent, his birthfather denied that Trent was his son.

Upon his return from his visit to Arizona we had continuing concerns. He had unsuccessful enrollments in Santa Barbara City College and Pasadena City College. During both enrollments he had his own living quarters. The Santa Barbara roommate turned out to be an unsavory character who didn't help Trent with his transition to college life. Both situations were negative to his recovery and sobriety.

In 2010, we sold our house in San Marino and moved to Thousand Oaks to be closer to my office at WestLake Village Golf Course. After leaving Pasadena City College, Trent lived with us. At that point, it was a tense environment. He would have outbursts of anger and several times destroyed doors, punched holes in the wall and was often belligerent. In June 2013, Trent came to Beth and said he wanted to get sober. He went to Axis House in Culver City for detox and rehab. He then went to sober living houses – Genesis House and then later Axis House. After completing those programs, he ended up living with several other graduates which was positive. Then he lived with his girlfriend, Tamara. They met through AA. They visited us together at our home in Washougal and it was a good time.

To his credit after numerous bumps in the road he was sober for over three years. He worked most of that time as a dog groomer for Petco.

Unfortunately, Tamara relapsed and by July 2018, Trent relapsed as well.

Except when he was under the influence of drugs, Trent was always kind and considerate. I feel the source of Trent's addiction is genetic given the drug use histories of his birthparents. Trent would never harm anyone intentionally. This is not in his character. I know he is devastated that his actions played a part in these tragic events.

Because of what has happened and because he realizes that he can live a sober life again, I do not believe that he would use or distribute drugs again. We talk, email and mail Trent regularly. He is very remorseful and trying to build a constructive life. It would be very beneficial if Trent was placed at the Federal Correctional Institution in Sheridan, Oregon. He would have the support of his nearby relatives and we could visit him regularly.

As has been shown in the past, Trent would clearly benefit more from substance abuse and mental health treatment than serving a long prison term. He responds to these programs positively.

Thank you for your time and consideration,

*Ted Tomasovich*

Ted Tomasovich

7

Honorable Judge John F. Walter

United States Courthouse - Courtroom 7A

350 West 1st Street

Los Angeles, CA 90012


Dear Honorable Judge Walter,


Hello. I am Trent's sister. I currently live and work in Los Angeles.  When Trent was sober for a period of time when he and I were in our twenties I experienced Trent as a young man working on himself, practicing meditation and taking an interest in how I was feeling. For the first time knowing him he was able to talk about his feelings and ask about mine. I think we were both working on ourselves spiritually at that time and we were able to connect. I hope to see him in a place like that again.

Growing up Trent had a lot of emotional turmoil. He will defend our parents, but this is a coping mechanism. It was too painful for him to come to grips with the way they treated us.  I saw Ted make him cry regularly. It was torture. He did the same to me. Our parents didn't discipline us, but they verbally abused us. At best it was almost like they weren't there. Physically they were but not emotionally.  The other half of the time -the worst times- both of our parents would belittle both Trent and I, insult us and make us feel awful about ourselves. I wish we could have had each other during this time -but Trent was in denial of how bad things were and so was I to an extent. While they provided financially there was absolutely no love just an occasional phony shell of it.  In spite of the pretty surface ours was a broken home. My depression became so severe I was hospitalized. I had the good fortune of connecting with members of my birth family in my twenties including my birth mother who took me in as a young adult and healed my wounds and taught me life skills that I never would have had otherwise.  Trent never had a birth family who cared about him or could take him in. Coming out

of college I did not have the self esteem to hold down an ordinary job prior to knowing her, and she taught me how to do it.  Our parents did not teach us life skills like this. Skills that we would need in the world to survive. My life turned around with the love of my birth mother. I was lucky enough to not have a biological predisposition to addiction.  If I didn't have my birth mother and if I had the predisposition for addiction (like Trent) I don't know where I would be now which leaves me with an endless amount of compassion for my brother who endured the same upbringing but didn't have the advantages I did. -One without life skills and without love.  One needs love from somewhere and it is very unfortunate that Trent filled this hole at a very early age - starting in childhood - with drug use.

Beth had a way of just laughing off one's worst pain. I remember hearing her laugh about Trent's addiction early on. I don't think she is able to empathize. I felt really heartbroken for Trent in that moment.

Although we weren't very close growing up (I always wanted us to be) I have never known Trent to display an ill will or cruelty. I remember when I accidentally dented the family car Trent sweetly ran out to our parents and told them not to get mad. Even when our parents were psychologically brutal Trent would get upset and angry but not cruel. He had a kind heart. I think his choice to sell dangerous drugs came from a place of unimaginable chemical addiction and not any cruel intentions to harm. His addiction developed as a coping mechanism for the abusive household we lived in. He did not intend to kill anyone, and I believe he sold drugs because it was the only way he could get enough money to feed an unfathomably powerful addiction/disease that had escalated over time. I believe his sentence should be reduced, because he is not a murderer and his reason behind selling drugs was his addiction disorder which developed from growing up in a very abusive home.

Thank you for taking the time to read this and consider my perspective.

9

Sincerely,

Jessica Tomasovich

April 21, 2020

Dear Your Honor,

My name is Karen Lembke, I'm a 33 year old artist living in Santa Fe, New Mexico, and I am Trent Tomasovich's older cousin.

I was about 5 years old when Trent was adopted by my aunt Beth and uncle Ted. Trent is the youngest member of our extended family and I have fond memories of him as a kid - his blond hair, cute smile, sweet laughter, and ability to make up silly songs.

Trent's older sister, Jessie (also adopted, from a different family) is my age and she is like the sister I never had. Since the beginning of 2020, Jessie has been in and out of hospitals for being a suicide risk. She is struggling to keep her job and find emotional stability in her life. I see many parallels between her and Trent's emotional lives, as product of their adoption and the parents they were raised by.

From the outside it would appear that Beth and Ted were the ideal parents. I do believe there is a level of deception to that idea. Trent and Jessie come from very different biological backgrounds but they both have struggled inordinately in their adult lives. In some lights, Trent was "better off" being raised by Beth and Ted - two non-drug users, very wealthy, in a big house in San Marino, and afforded all of the luxuries of life (a pool, giant trampoline, basketball court, latest gaming systems, dogs, and new cars). But you can't buy love. It is my belief that: the love Beth and Ted showed Trent was not enough to fulfill the nagging feeling (which was the heartbeat of his life) about who he was and where he came from.

I can't imagine the emotional and psychological obstacles that come with being adopted. I was born and raised by my biological parents. All I can speak to is the type of family Trent grew up in, based on my experiences around all of them. Which is to say: Trent was raised by parents who are not emotionally validating or available, who often used phrases like "children are to be seen but not heard," and exhibit narcissistic behaviors that force the children's needs to be second to the parents'.

My mother (older sister to Beth) is an alcoholic and I know the toll that exposure to do to a kid. I don't believe Beth is an alcoholic but I do think her

parenting style is similar to my mother's which is avoidant, emotionally abusive, narcissistic, and inconsistent.

I've struggled with anxiety and depression most of my life because as a child, I was not comforted and put at ease by my parents; my parents were not consistent and often emotionally unavailable. My mom was not a reliable care giver. I was anxious then and I'm anxious now. It is a constant, up-hill battle to right the wrongs of my childhood but I know it is possible to find peace and happiness.

I wish the same happiness for Trent. During the years when Trent was sober, he truly was an amazing young man. His tough-guy, tattooed exterior was a façade covering a person who is compassionate, always willing to listen, animal lover with a heart of gold. I believe Trent fell into the trap of reoccurring bad behavior because he was too weak emotionally and because drug use and addiction runs in his biological family's predispositions.

In recent years, I have been worried that I would get a call saying Trent had overdosed. I did not expect to hear that he had played a part in two other people's overdoses. I am deeply saddened by the losses Trent caused. Addiction does terrible things to good people. I am relieved to hear Trent is safe and has time to reflect on his life.

I have been corresponding with Trent via the email messaging system. He has always been my baby cousin and I've always felt like I could tell him anything. In a family that doesn't speak openly about their feelings, Trent's candidness has always been something I valued. I wish the best for him.

Thank you for your time in reading my letter and considering my perspective in Trent's case.


Sincerely,


Karen Lembke

January 3, 2020

To: Honorable Judge Walter

Re: Trent Tomasovich, Case No.CR19-53-JFW

My name is Bridget Hollander.  I am currently teaching AP History and Special Education in long

term assignments as a substitute teacher in two Los Angeles Public High Schools.  I have done

this work for 10 years.  Before that, I was a reporter for a KCET-TV and a voice-over actress for

thirty years.

I have known Trent since his infancy.  Trent and our daughter were born two months apart

in the same hospital in Tucson, Arizona.  They were both adopted.  Trent's parents, Beth and

Ted, are our dear friends for thirty years and our families have shared countless wonderful

times together—many at their lovely home.

It became our family tradition to spend the 4th of July with them. *the Tomavich family* We would gather at a park

near their home and watch a parade.  Trent and his Boy Scout troop would march in this

parade.  One of my fondest memories of these times was to see Trent, in his uniform, waving

the flag and flashing a proud smile as he marched past us.

As a child, he was very kind and considerate to other children.  Once, when several kids

were on the trampoline, our daughter fell and injured her ankle. She couldn't get up and with

all the commotion, the other kids didn't notice, and accidentally jumped on her, injuring her

again.  But Trent saw immediately that she was hurt. He told everyone to stop jumping, and

then carefully helped her off the trampoline. She was crying as he half carried her into the house, trying to comfort her. "Don't worry, Danielle, it's going to be OK," he said.

Like many adoptees, Trent and our daughter had some learning and attention issues in school. I know that Ted spent many long nights helping Trent with algebra as my husband did with our daughter. Struggling in school can lead to anxiety and depression as a child gets older. Nevertheless, Trent had great social skills and always had many friends- boys and girls- at the Tomasovich home.

He is also very kind and caring to animals. I have seen him be so affectionate with his dog, Remington and he once drove hundreds of miles to adopt a homeless cat. He was a wonderful pet groomer for a while and shared with us his feelings for helping animals.

From time to time, when we were all together, I would overhear Trent and our daughter discuss their feelings on being adopted. They were actually helping each other try to understand why they were given up at birth for adoption. I think they felt a connection to each other and took some comfort in this connection. I remember Trent once asking his mom, "What is Danielle---is she my cousin or something?"

In their late teens, and early adulthood, both Danielle and Trent, at different times, journeyed to Arizona to meet their respective birth families. Our daughter was embraced by her birth family. They are lovely people—all thriving and living productive lives.

But no such warm reunion awaited Trent. Instead, he found a dysfunctional family, struggling with alcoholism and drug addiction. For reasons I don't know, his birth mother has been in prison. And of all the children she had, Trent is the only one she chose to give up for

adoption.  For some adoptees, learning the sad circumstances of their birth family can bring feelings of shame, worthlessness and despair that can affect the young person deeply.

Trent shared the details of one especially disturbing visit with our daughter.  While visiting siblings in Arizona, two of them decided to hold Trent hostage in the trailer in order to extort money from Beth and Ted.  They pinned him down and burned him with cigarettes.  But somehow Trent escaped and came home.  He never told his parents what happened. I can only imagine the feelings of horror and helplessness this must have caused Trent.

These charges against Trent are grave.  Because of his very poor judgement, two young people are dead. I have said many prayers for the peace of these two young people, for their families, and for Trent.   I don't know the specifics of what happened.  But I do know one thing: Trent would never knowingly harm or hurt anyone.

I ask the court to please consider this when he is sentenced.

Respectfully,

*Bridget Hollander*

Bridget Hollander

January 3, 2020

Honorable Judge Walter

Re: Trent Tomasovich

Case No: CR19-53-JFW

Your Honor:

My name is Carlton Hollander. I currently work as a substitute teacher for Los Angeles Unified School District, and have done so for the past 13 years. I live with my wife, Bridget, in our home in Valley Village, CA, where we have resided since 1983. We have been close friends with Beth and Ted Tomasovich since the mid-1980's. In 1991 we adopted our first daughter at birth. Only weeks later Trent was born and adopted by Beth and Ted.

Because of our close friendship with Beth and Ted, our daughter had many opportunities to see and play with Trent throughout her childhood. And I had the pleasure of knowing Trent throughout his formative years. Respectful and courteous, Trent always displayed a sense of caring and concern for those around him. On more than a few occasions when my daughter would fall off a swing or a trampoline, Trent was the first to go to her side and offer help. My daughter had told me that on many occasions she and Trent had shared their feelings about being adopted.

Being only weeks apart in age, Trent and my daughter were dealing with the many issues facing adopted children, especially feelings of having been abandoned. When my daughter reached her late teens she decided to confront those issues by visiting her birth mother and grandparents. She was welcomed with great love resulting in the formation of an extended family.

Trent also went to meet his birth mother. But the results were horrific. From what I have heard, Trent's birth mother was a drug addict and alcoholic who told Trent that he had been the only one of his siblings to be put up for adoption. There was no celebration for Trent, only demeaning rejection. It is difficult to imagine the emotional and psychic damage such a response would have had on my daughter.

Trent spoke with my daughter about this troubling event, and my daughter hoped that she would be able to help him recover. But it is my feeling that the enormous rejection experienced by Trent fueled his propensity to addiction.

In addition it has been proven that a child born to an addicted mother is more than likely to fight addiction throughout his or her life.

16

As Trent's birth mother was a known drug user and alcoholic
it seems likely that this biological connection does exist.

I have seen firsthand how addiction can turn a normally law
abiding and well intentioned individual to committing crimes.
When I was in my early twenties my older sister became
involved with drugs, then disappeared. After a long search, I
found her in south San Francisco, close to death after having
spent a year committing thefts and engaging in prostitution.
She was primarily a meth addict, and her addiction had driven
her to become a criminal. After a year in a serious rehab
program she eventually got clean. Today, she is the proud
mother of two very successful daughters. As with my sister, I
believe Trent's criminal past has resulted from the need to
maintain his addiction. Also, my sister's success proved to
me that rehab can work, and even if it takes multiple
attempts it is critically important to try.

Knowing Trent, I truly believe he is experiencing the most
intense remorse possible over the tragic deaths of the two
individuals who purchased Fentanyl. But this story is not
unique. It is happening all across the United States as the
cartels and foreign powers continue to move this toxic drug
across our borders. In our public schools, as well as the
media, there seems to be a general lack of alarm. I have seen
high school students laugh at the warnings about Fentanyl. To
them, it is just one more in a long line of threats to their
existence.

I believe this case, as tragic as it is, may offer some
opportunities to help put an end to this scourge.

Even though Trent was adopted by loving parents, he was dealt
a number of primal blows which include his biological
propensity to addiction and cruel rejection from his birth
mother. A prison term will only allow these negatives to
fester, along with his addictions. A firm and tough rehab
program combined with a commitment to help fight drug abuse,
however, might provide Trent with a chance of doing something
worthwhile.

Thank you for reading this. I hope I have conveyed some sense
of how strongly many of us feel about Trent.

Sincerely,

Carlton Hollander

**Linda Gustafson**

@gmail.com

December 27, 2019

RE: **Trent Tomasovich, Case No. CR 19-53-JFW**

**Dear Honorable Judge Walter,**

It is with great sadness that I find myself needing to write this letter to you. I
have known Trent Tomasovich since the day he was born. In fact, my husband
and I named him. His parents, our good friends Beth and Ted, called us on
their way home from the hospital after adopting their new precious baby boy.
Sharing in their new parent excitement, we all discussed names for him. My
husband and I suggested the name Trent, and they loved it.

Trent was like another child to me. Our kids played together all the time. We
were probably at the Tomasovich home more than any other friends' home
during our children's shared childhood. I clearly remember what an idyllic
childhood his parents gave him. Their love and support for Trent were
palpable. Oftentimes I thought my kids were a bit envious of the love Beth and
Ted gave to Trent and his sister. He was a very thoughtful boy, especially to
the disadvantaged. One of my sons, Eric, is blind and Trent took him under his
wing from an early age. He would watch out for Eric in ways that may sound
simple to a sighted person, but to a blind person they are very compassionate.
For example, Trent would be sure Eric got his share of pizza when Beth served
it for dinner, and he would be sure Eric was never left behind when the group
was heading off to an activity.

Knowing Trent so well, and raising two boys of my own of the same age, I also
started to see that Trent did not have the same coping skills as kids his age
should have.  All kids go through separation anxiety, but this was different.
Trent would cling to his mother and have extreme anxiety if Beth was not near
him. Although we would have loved to have him stay overnight for typical
childhood slumber parties, that was out of the question as his anxiety would
skyrocket at the thought of being away from home. As he got older, his anxiety
only grew. To control his fears, Trent would question everything and everyone
in his environment. Although this may sound suffocating, Trent had a charm
and sweetness about him that made him very well-liked by schoolmates. He
had a tremendous amount of friends in high school. This was probably due in

18

part to his need to control his environment. If he took care of his friends, he knew how his day would be.

It was in high school, however, that Trent started to dabble in drugs. He went to high school in an affluent neighborhood and drugs at parties and other places were, unfortunately, part of 'the scene'. His parents recognized this negative situation and took action quickly. They transferred him out of that school and put him in a private school far away from that environment. In his new school he would be accountable for all of his actions, and drugs were not tolerated.

He seemed to flourish in this new environment and left drugs in his rearview mirror, so to speak. After high school, Trent worked as a pet groomer for several years. He had an affinity for animals and found peace in comforting their innocent souls.

Trent's anxiety, however, always seemed to hover near the surface and once he turned 19, he decided to look for his birth parents. This would, perhaps, give him the answers he needed or at least give him some insight into his extreme anxiety. However, what he learned was devastating. He was born damaged from drugs used during his mother's pregnancy. Both of his birth-parents were drug addicts. He was also the youngest of three children born from the same parents, but he was the only one given up to adoption. In other words, Trent was born with a predisposition to the demon of addiction and abandoned by his parents. Soon that demon would catch up with Trent.

He remained clean for the next four years, working hard and being a productive member of society. However, he got involved with the wrong crowd and fell for the wrong woman. She was a drug user, and Trent slipped. It didn't take long for Trent to get trapped into a cycle of drug use to calm his anxieties which in turn triggered his predisposition to addiction.

As I stated at the beginning of this letter, it is with great sadness that I write this. Trent has the capacity for such great kindness and generosity to others, but his life got off track. It is my opinion that Trent would benefit society and himself most if he was given the opportunity to be prescribed the right medications for his anxiety and given the right tools to fight his addiction. Unfortunately, his story of addiction is not unique, but it can be used for a greater good in showing others what not to do. With your help, and the court's guidance, he could become a useful member of society again in helping others with a predisposition to addiction.

Sincerely,

Linda Guslofse              19







January 1,2020

To the Honorable Judge Walter,

My name is Fredric (Ric) Long and I'm writing on behalf of Trent Tomasovich who I have known since he was about 6 years old. I know Trent through my relationship with his Aunt Phyllis Gary with whom I have been a domestic partner for the last 25 years. I'm a retired middle school teacher and coach and have spent much of my life working with troubled youth.Trent and I have always had a close relationship especially as he grew older. He trusted me as a neutral third party and we would often stay up late after family gatherings to talk about his troubles and struggles in life.

In middle school told me about how difficult it was to live up to family expectations. Both his father and Uncle Mike were very successful student athletes who excelled at multiple sports and earned full scholarships to college at Georgia Tech University. It helped that they were both very tall. Trent, who was always small for his age realized that he was never going to obtain their physical status. In addition he struggled at school to keep up, let alone excel. He told me that the schools in San Marino were really hard and that he was working as hard as he could just to keep from failing.

In high school, he took a final stab at athletic success. He joined the football summer conditioning program, put on 20 lbs. of muscle and was really proud of his appearance. After an injury ended his football career he began his descent into substance abuse. He began smoking cigarettes, pot and experimenting with other drugs.

Throughout his high school years and early adulthood he maintained his sweet, thoughtful, caring personality when sober. Which contrasted with his tortured, tormented, self centered life when using. It was truly a Dr. Jeckle and Mr. Hyde existence.

After several interventions and treatment programs Trent found success with a residential program in Utah that emphasized replacing the highs experienced with drug use with the natural highs achieved through outdoor challenges and achievement. Trent was proud of his sobriety and surprised his parents at Christmas by earning his high school GED early, which he gave to them as a framed gift.

When Trent was 19 he decided to continue his journey of self discovery by meeting his biological family in Arizona. He was shocked and disheartened by what he experienced.
"My God, they're all drug addicts and thieves," he told me. The first day he was there his biological mother was busted for shop lifting at a local Walmart. One of his brothers was in jail and several other family members where facing various charges. Needless to say he experienced a relapse that included a near death experience from a drug overdose.

Trent eventually left Arizona and continued to struggle through periods of sobriety and addiction. At one point he maintained a sober lifestyle for several years working hard to make atonement for his past transgressions. He truly regretted the pain that he caused his family.

In closing, I believe Trent is at heart a wonderful, caring individual who has struggled to find his place in the world. He has worked hard at sobriety throughout his young life. With maturity, and I hope lasting sobriety, I know he make a positive contribution to this world. He has incredible potential.

Sincerely,

Fred M. Long

January 1, 2020

To Honorable Judge Walter,

I am Phyllis Gary, Trent Tomasovich's aunt and his mother's sister.  I live in Oregon and am a retired educator with 33 years teaching in both elementary and secondary schools.

I've known Trent since he was born, and have watched as he and his parents struggled during his lifetime of mental health and addictions issues.  Trent was always lovable and endearing, even in the most frustrating of times.  By the time he reached teen years, he was seeking ways to self medicate.  His back issues and other pains led to finding prescribed drugs, but it was never enough. During annual Christmas gatherings at our home in Eugene, Trent often stayed with my partner Ric and me.  We loved him but his  sleepless nights and impulsive behaviors were hard to see.  As disruptive as his frustrations may have been he was never violent or angry with anyone.  In fact, when he could, he contributed kitchen projects, original rap songs, and lots of love to our family.

As the mother of an adopted child (now 44) I firmly believe that some children come with a set of issues from birth.  In addition, there are issues inherent simply from the fact of adoption. Even in the most supportive and loving families, being adopted can complicate matters, especially as they reach adulthood.  Connecting with his biological family at 19 was, I believe, very impactful  for him.  I've heard him say he wished he could do more for them as their life was difficult.  This is understandable since their lifestyle  was a direct contradiction with the home he had grown up in, yet he could see himself in their personalities.  The push and pull between him and biological family members continued for some time, perhaps still.

The life ahead for Trent is not what anyone could have imagined for him, and is heartbreaking. I know that he is willing to work hard at whatever he undertakes and when sober has great potential for making contributions to his community.  My hope is that he can get the help he truly needs while incarcerated and return to a family that loves and values him.

Sincerely,

*Phyllis Gary*

January 5, 2020

Honorable Judge Walter,

My name is Gail Gary Lembke. I am Trent Tomasovich's aunt. I have known him since
his adoption. My husband, Miller, and I live in Portland, OR. Our experiences with Trent
have been at Christmas and summer visits.

As a youngster Trent was happy and easygoing. He looked up to our two boys who are a
few years older. They had great fun together.

I always thought that his parents were over indulgent but in a very loving way. He got
what he wanted, but doubt that attributed to his addiction.

His height may have something to do with his self-esteem. He was often mistaken for
someone much younger.

Two great attributes, his love of animals and cooking. He taught me how to make
'cheesy toast' when he was about 5. I think of him every time I make it. After his
earlier troubles and when he started pet grooming I thought he had found his niche and
would stay off drugs.

We have not had much contact with him for about ten years.

I believe he would benefit much more from substance abuse and mental health treatment
than prison. His current experience in detention and treatment will lead to a sober,
fulfilling life.

We love him!

Gail and Miller Lembke

Portland, OR

503

@gmail.com

July 8, 2020

Dear Honorable Judge John Walter,

My name is Jamie Eddinger and I am Trent Tomasovich's biological mom. Thank you for taking the time to read my letter about Trent. I live in Tucson, Arizona with my son Adrian. I recently got out of federal custody after 13 months for a case in Arizona. I am now on probation and I am working on doing everything I need to do to keep my life on the right path.

I was almost 24 years old when Trent was born. I was in a bad relationship with his biological father at the time, and was struggling with drugs. In fact, I used crack during my pregnancy with Trent. I loved Trent and that is why I gave him up for adoption. I thought that was the best thing for him at the time, and I still think that was the best decision I made for Trent. The people who adopted Trent seemed loving and it seemed to me like he was going to live with a good family.

Trent came to visit us in Arizona when he was in his late teens. I know that it must have been difficult for Trent to meet us after all that time, but I was glad to get to know him a little bit. Trent's legal team contacted me when I was in Carswell Medical Center for mental health restoration on my last case. Mental health issues run in my family and it is an issue that I have dealt with for a long time.

I was shocked to hear what happened with Trent. I know that Trent did something very serious and I know he is looking at a lot of time in prison. All I want for him is that he gets better. I too have struggled with addiction in my life, including heroin and crack, so I know how difficult it is to overcome. My wish for Trent is that he gets the chance to get the help I know he needs to deal with his addiction.

Thank you for taking the time to consider my letter.


Sincerely,

Jamie Eddinger

Jamie Eddinger

# Charles W. Allen, LMFT
## Licensed Marriage & Family Therapist, (LMFT 946565)

███████████ Santa Monica, CA ████
(310) ██████

October 14th, 2019

The Honorable Judge Walter

Dear Judge Walter,

I am writing this letter in regards to my former psychotherapy client, Trent Tomasovich. It is my understanding that Trent sold drugs to someone who subsequently overdosed and died and he is now facing criminal charges for what he has done. Trent must of course face consequences for his role but my hope here is to share my observations of Trent and then ask that Your Honor consider leniency in this case.

I first met Trent six years ago when he entered a residential substance abuse treatment program here in Los Angeles for treatment of his addiction to heroin. Trent had also been previously diagnosed with Depression Disorder, Anxiety Disorder, Attention Deficit Disorder, Substance Use Disorders and Parent / Child Relational Disorder, many of the most severe symptoms of which I observed in Trent. I came to also learn that Trent was adopted at birth and that his birth mother had been addicted to drugs.

I came to be very fond of Trent and found him to be a personable, sincere, but deeply wounded and extremely fragile young man whose only coping skills seemed to be self medicating his depression, anxiety and deep feelings of shame. Trent responded well to the treatment and went on to a sober living program afterwards. He then maintained sobriety for a couple of years as I remember and was gainfully employed. Trent continued to see me for counseling for the next year and we stayed in touch for several years. Prior to this I'd not heard from Trent in a couple of years  but I learned that he had relapsed.

From my observations and counseling of Trent I came to see that this was a person who was born traumatized and possibly physically dependent on drugs while his mother was pregnant. Trent and his parents report no known traumatic events or neglect in his childhood yet he has many of the symptoms and diagnoses related to Post Traumatic Stress Disorder (PTSD). Also, I have gotten to know his parents, Beth and Ted, and they are very caring and nice people who have done their best to help Trent with his life problems.

Being in recovery myself and working in the field of addiction treatment for over ten years I can say that Trent is one of the most  lamentable cases I've ever had and it pains me deeply to know that his actions resulted in the death of another person. My hope however is that Trent can reform himself and become a productive and law abiding member of society. I truly believe that this is possible for him after he serves his punishment and then hopefully gets the help he needs to become a functioning and useful member of society.

Your Honor, while this young man is definitely a drug addict who did something incredibly reckless and wrong, he is not a violent, aggressive, malevolent or villainous person. In fact I know him to have a kind and giving heart, especially when he is sober and functioning well in the world. I ask that you consider leniency in his sentencing.

Thank you for your time and please feel free to call me at ph. 310.482./9958 if you have any further questions.

Sincerely,

*Charley Allen*

Charles Allen, LMFT



**ETHOS**
COMMUNITY
IS OUR METHOD

May 8, 2020

Your Honor Judge Walter:


My name is Christopher Howard and I am the founder of Ethos Recovery, a long-term (12 - 18 months) structured sober living Culver City that was established in 2015. Ethos Recovery is a community that assists men in developing new attitudes, values, and beliefs to foster long-term recovery. I have been sober for over 10 years and have dedicated my life to helping men adopt the healthy lifestyle changes that shifted the trajectory of my own life.

I am writing you today on behalf of Trent Tomasovich, to express the fundamental change I witnessed in him during the duration of our relationship. I have known Trent for approximately 7 years, during that time I was able to watch him grow into man of integrity, and subsequently fall back into addiction, through many trials and tribulations. When I first met Trent, he entered the previous program I directed, Axis Recovery. Like Ethos Recovery, the primary focus of Axis was to elicit a fundamental change in perception over the course of treatment. Trent entered the Axis afraid of the social world with virtually no life skills. He was socially withdrawn and had a difficult time processing his feelings in the group dynamic, which we believed stemmed from attachment issues surrounding his adoption.

After working with him for some time we began to see a different person emerge. Over the course of the next 12 months Trent became a man of refined character. He was an upstanding member and leader of the community at Axis and twelve-step communities. Often, we would rely on him to serve as a trustee and resident manager in the evenings.  He completed his twelve steps with his sponsor, began service work with a number of sponsees, including my current manager at Ethos Recovery.  He had developed significant relationship with members of the community, which was ameliorating the attachment issues he struggled with. He held down gainful employment as a dog groomer and was trusted to manage his own accounts. Life began to blossom.

Eventually, Trent completed the program and moved out with other house members. He developed a relationship with a young lady that appeared to be beneficial at first, but soon became problematic. Myself and his brothers from the community grew concerned and spoke with Trent, after he confessed that he caught her cheating on him multiple times. As members

Ethos House
3914 Tuller Ave
Culver City, CA 90230
Fax: (310) 391-6879
www.ethosrecovery.com

27

of a recovery community we understood that this was a recipe for disaster. It became clear that the attachment issues he struggled with were clouding his judgment. He withdrew further from his network and dove deeper into the relationship, which ultimately lead to relapse. I do not believe that the relationship is to blame, and I think the unresolved attachment issues played a major part in clouding his judgment, which ultimately landed him in his current disposition.

Thorough his recovery experience Trent was able to develop an extensive AA community. I would personally be willing to place him at Ethos Recovery because I understand the value he has as a leader and community member. Part of Trent's recovery process entails that he ameliorates the wreckage of his past. Given the opportunity, I believe that Trent would be able to give back to those who suffer from addiction and traumatic life experiences. We believe Trent is an invaluable asset to the local recovery communities. If you should have any questions, please feel free to contact me at (818) ███████.

Sincerely,

Christopher Howard
Ethos Recovery - Founder

2

Dear Judge Walter,

 I am Theodoros Kapogianis. I am a researcher at UC San Diego in a visual neuroscience lab, I graduated from UCSD in 2019 with a degree in Cognitive and Behavioral Neuroscience. This coming fall, I will be starting a PhD program at UC Irvine in the Interdepartmental Neuroscience Program where I hope to pursue research on the intersection of learning, memory, and addiction within neuronal networks. I am also a graduate of a highly structured recovery programed now referred to as Ethos house in West Los Angeles. I spent thirteen months, 9/13-10/14, in Ethos House, that is where I came to know Trent and befriend him. I have managed to stay sober since 8/15/13 by the grace of powers outside my control and my life has flourished beyond my comprehension.

Since I have known Trent, he has been someone never shies away from taking ownership of his mistakes and taking actions to amend them. Even in periods where addiction has run rampant in his life. He is a kind-hearted man that never hesitates to put the needs of others before his own. I was most impressed by his level of personal accountability and selflessness in our early days of sobriety at Ethos House. Each resident was given chores to help maintain the house and for a period Trent and I were put in charge of ordering groceries for the house. I alone made a mistake that caused the disruption of the food delivery by a few days. This forced management to order dinner that evening and send senior residents to market for supplies to hold us over till the delivery was completed. When management approached us to inquire about the mistake made Trent jumped forward to claim joint responsibility for my mistake before I could say anything. When I asked why he had done that, he responded saying that we were on a team our successes and failures were one and the same. This pains me because since moving to San Diego for my own progress, I failed to show up for someone I consider a brother in their time of need.

Although my achievements in sobriety may be interpreted as an example of the successes through sobriety, it must be recognized that everyone has a unique path because of their own distinct personal obstacles. Trent's path has led him to your chambers Your Honor. If you so desire, I could send you a series of peer-reviewed journal articles describing how childhood traumas cause significant neurological restructuring which contribute to mental health issues, such as drug addiction, in adolescence and adulthood. I do not bring this up to excuse Trent's actions. I merely hope to point out, there are often underlying factors that contributed to the path people have trod. Trent's adoption and lack of relationship with his own biological parents was something that plagued him long before I knew him. It has affected the way he connects to people, both his community and significant other. He had expressed to me that it often leaves him feeling apart from, even when surrounded by those who care for him. I know there is continued hope for Trent and his success in the future because he grew so much in the time that I knew him before his relapse. He shifted from someone who was emotionally closed off to a man that was open to sharing about his childhood traumas. Someone that showed up for his loved ones through thick and thin. He was someone I would reach out to in times of personal turmoil, showing me empathy while simultaneously nudging me to stay accountable to my actions.

I cannot speak on behalf of anyone other than myself, but I will not turn my back on Trent again from this day on. I know he has many men from our recovery home and loved ones who care for him and want the best for him. I have recently written Trent a letter so that we can remain in contact while he serves out his sentence and after his release. I commit myself to offering any resources and aid available at my disposal whether that be visits, letters, sending him educational or self-improvement materials, or taking part in AA panels. I ask that you take a holistic view of Trent's circumstances. Keep in mind that he an

29

individual who has lived a lot of life, with a lot more to live, and not to simply judge his character from this single moment in time.


Best Regards,


Theodoros Kapogianis



# MGA MEDIA GROUP

███████████████ , *Encino, Ca,* █████ *(818)* ██████

Dear Honorable Judge Walter

My Name is Honida S. Alqadi I am the president and CEO of Mega Media Group- An advertising agency for multi Ethnic channels in USA, Canada and Australia, live in Encino Ca, the mother of Tamara El Kadi (Trent Tomasovich EX Girlfriend) I have known Trent for 5 years now.

When I met Trent he was working at a pet grooming shop been sober for 3 years, Tamara and Trent met during their recovery at an NA meeting, he was a caring guy comes from a great adopted family. Trent's adoption was something he struggled with giving the fact that his birth mother only gave him for adoption and not his siblings this subject hunted him all his life. Having said that Trent was still polite and cared a great deal about Tamara

His issue was his insecurity and lack of confidence he was always insecure to be around the family

Shortly after Trent lost his Job he relapsed and was trying to get back on his feet but his addiction took the best of him and turned him in to a different person that I didn't recognize. I only found out about his relapse when he was arrested and learned all about what was happening. Trent needed to feed his habit and took the easy way out by selling in order to be able to support his addiction

Your Honor, I am writing this letter from a mother of an addict and know that addiction is a disease, not everyone can beat, and it's a daily struggle that takes a strong well to overcome. I read on line about the case and the reason Trent is in Jail, it broke my heart to hear about the two people that died but as a mother of an addict and if my daughter one day overdosed I would have to live with it and the only person to blame would be her not who sold it. Selling drugs is a crime and he should certainly pay his time for it, along with a long rehab treatment.

I hope my letter would help with his sentence and I really thank you Honorable Judge Walter for taking the time to ready my letter

Sincerely

Honida Alqadi

31

# Exhibit E –
# Mr. Tomasovich's Letter
# from Wilderness Program
# in 2008

Trent Tomasovch

## THE STORY OF MY LIFE!!

My name is Trent Tomasovich and I was born in Tucson, Arizona. I was born on the night of April 29, 1991 to my mother and father that I still know nothing about. The moment I was born I was taken by my foster parents Beth and Ted Tomasovich and was taken to a sunny little town of San Marino. I grew up there all my life with one older sibling named Jessie. I also had 2 cats, named Rosco and Tilly, and a dog named Jack. As I was younger before preschool, I went to a daycare at the Goodman's household. I went there everyday for about 2 years and it was probably the best time of my life.

After that I went to preschool and then kindergarten and so on. I went to Carver elementary school and later moved on the Huntington Middle School. At the age of 14 I graduated eighth grade and I started high school, and that's when my life completely did a 360. As a freshman in high school I played football for San Marino. I started on both offense and defense. My two positions were tailback on offense, and linebacker on defense. This continued to be my position through the season until I got knocked on my ass and was told by the doctor that I had endured a slight concussion. I couldn't play for the rest of the year and because I fell behind the other players my position was taken for my sophomore year. I continued to play football for San Marino until junior year because I couldn't deal with all the pressure my dad was giving me about not being able to play and that I would never succeed in life if I couldn't overcome the pain and play through it. Losing my position along with my dad's egotistical brain I had enough of the game I once loved and moved on.

After the fact that I told my dad that I couldn't play football anymore, he didn't want me to become a lazy person so he introduced me to boxing. Well in a way he did he mainly wanted me to learn self defense because he thought that it would be good later in life, and I was the one who choose boxing. I continued with that for about a year and a half and then one day I came home to my dad yelling at me and I most of the time I would say I overreact but this time I didn't. He had kicked me out of the house and in my anger I had punched the living crap out of a stucco wall breaking the two bones in my pinky. After my hand had broken I never really could go back to boxing because I had lost 8 weeks of training and my coach said I couldn't participate in the tournament because I had lost so much time without training. Life had proceeded to move on but because I wasn't getting my anger out from then my life had just been like complete crap.

Because I stopped playing football I sort of lost the friends that I used to play with because they moved on to Varsity and they started chilling with the Seniors and they had their own little family that I could never be a part of because I wasn't a "player". I moved on and hung out with a different group. With everything to deal with my parents, my friends, my school, just everything seemed to be crashing down upon me and I tried to deal with it my way by not really giving a crap but that kind of didn't work and that is the reason why I ended up here.

Despite my anger about being here I honestly have to say that if my parents didn't do what they did I would be completely gone by now and not giving a crap about anything. This place had made me want to get back on my feet and start over and be able to live like I used to, without anxiety and feeling like everyone doesn't care about me. As one of my good friends said that I needed to wake up and smell the roses. And I

1

guess me being put in here made me realize that really isn't that bad on the outside. And I really am willing to get my feet back up and feel better.

When I get out of here I am going to reconnect with all my friends and my pets but most importantly I think I need to connect with my father. We need to mend our problems together and work with each other to overcome our problems. Once I get my life back together, my feet stationed on the ground, and my head in place I plan on finishing high school and then going to Santa Barbara Community College. After my two years there I would most likely transfer to UCSB and continue my college career there. If I were to go to UCSB I would major in English and I would then enlist myself into the military, what I have been planning on doing my entire lifetime. The unit I would want to be a part of would be the Marines. I cant necessarily tell you why I just have liked them since day one. After my military course I plan on getting accepted to an academy so I can move on and I can fulfill my life long goal as becoming a member of SWAT (Special Weapons and Tactics). I plan on living a good life with a wife and 2 kids. And although my dad hasn't been there completely for me I know that my dad will always love me and I hope that I cant do the same for my kids that he has done for us.

# CD Filed Manually with Court

# Exhibit F - Sentencing Video